UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey R. ACKLEN, Defendant– Appellant.

No. 94–40273.

United States Court of Appeals, Fifth Circuit.

March 16, 1995.

---

Jeffrey R. Acklen, pro se.

Cristina W. Chandler, Josette L. Cassiere, Michael D. Skinner, U.S. Atty., Shreveport, LA, for appellee.

Before KING, GARWOOD and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Jeffrey Acklen (Acklen) appeals the district court's denial of his petition for

relief under 28 U.S.C. § 2255. We vacate and remand.

## Facts and Proceedings Below

On January 25, 1990, a federal grand jury returned a twelve-count indictment charging Acklen with a variety of drug-trafficking offenses for which Acklen acted primarily as financier. In March 1990, the government agreed to dismiss the indictment in exchange for Acklen's plea of guilty to a bill of information. The superseding information charged Acklen in count one with conspiracy, from March through December 1989, to manufacture and distribute methamphetamine, a Schedule II controlled substance,[1] in violation of 21 U.S.C. §§ 846, 841(a)(1) and in count two with distribution of methamphetamine in September 1989 in violation of 21 U.S.C. § 841(a)(1). As part of the plea agreement, Acklen stipulated that the amount of methamphetamine produced as a result of the conspiracy was at least ten but less than thirty kilograms. The district court accepted the plea, entered a judgment of guilty, and, consistent with the plea agreement and Presentence Investigation Report (PSI), on July 9, 1990, sentenced Acklen to two concurrent twenty-year terms of imprisonment and six years' supervised release.[2] Acklen's conviction and sentence were af-

firmed on direct appeal in an unpublished opinion issued by this Court on May 15, 1991.

Thereafter, on June 21, 1993, Acklen filed the instant motion under 28 U.S.C. § 2255 to set aside, vacate, or correct his sentence, urging that his trial counsel's failure to contend at sentencing that the methamphetamine involved was l–methamphetamine and not d-methamphetamine rendered his representation constitutionally ineffective. Acklen also requested discovery of alleged exculpatory material, a lab report, which Acklen contends would conclusively establish the type of methamphetamine involved in this case.[3] The district court refused to permit discovery and denied the section 2255 motion, but granted Acklen's motion for leave to proceed *in forma pauperis* on appeal.

## Discussion

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.1994). Because a challenge under section 2255 "may not do service for an appeal," a movant may not raise constitutional or jurisdictional is-

---

1. *See* 21 U.S.C. § 812(c) (defining as a Schedule II drug "any injectable liquid which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers").

2. Notwithstanding the government's suggestions to the contrary, the parties to the plea bargain did not agree to a specific sentence. The agreement reads, "Defendant acknowledges that sentencing in this matter is within the discretion of the Court, and that on each count he faces a maximum penalty of twenty (20) years imprisonment, or a fine of not more than $1,000,000.00, or both...." Although the sentencing range calculated under the Guidelines was 262 to 327 months, the PSI noted that, under the statute, the maximum term of imprisonment on both counts was 20 years. At sentencing, the court remarked, "Your plea bargain states that you will be sentenced to no more than twenty years. The sentence is twenty years on both counts to run concurrently." On direct appeal, this Court stated: "Under the plea agreement, ... Acklen's maximum penalty was twenty years imprisonment and six years supervised release."

In stating the maximum term of imprisonment, the plea agreement, implicitly, and the PSI, ex-

plicitly, relied on section 841(b)(1)(C). Given the stipulated quantity of methamphetamine, however, the appropriate provision may be section 841(b)(1)(A). Under section 841(b)(1)(A), an offense involving "1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers" requires a sentence no less than 10 years and no more than life. Thus, unlike section 841(b)(1)(C), which involves far smaller amounts of methamphetamine, section 841(b)(1)(A) does not provide a maximum term of imprisonment besides life. Neither of the parties raises any issue in respect to this possible discrepancy.

3. In an October 1993 motion for extension of time to file a traverse to the government's response to the petition, Acklen also indicated that he wished to pursue a *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim based on the government's failure to turn over the lab report. The district court on November 10, 1993, dismissed the petition before any traverse was filed.

sues for the first time on collateral review without establishing "both 'cause' for his procedural default and 'actual prejudice' resulting from the error." *United States v. Shaid,* 937 F.2d 228, 231–32 (5th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992).

■■■ Acklen's constitutional claims in this case center around the assumption that l–methamphetamine, and not d-methamphetamine, was the drug involved in this case.[4] D– and l–methamphetamine are stereoisomers of methamphetamine; they consist of identical molecules differently arranged. *See generally United States v. Bogusz,* 43 F.3d 82 (3d Cir.1994). For purposes of conviction, the difference between the isomers is irrelevant; section 841 does not distinguish among types of methamphetamine. *United States v. Deninno,* 29 F.3d 572 at 579 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). For purposes of the Sentencing Guidelines, however, l–methamphetamine is specifically distinguished from all other types of methamphetamine. Because l–methamphetamine is "grossly different" from other forms of methamphetamine, in that l–methamphetamine "produces little or no physiological effect when ingested," the Guidelines' Drug Equivalency Tables treat it far less severely. *Bogusz,* 43 F.3d at 89.[5]

■■■ Essentially, Acklen argues that his attorney was ineffective for failing to object at sentencing to the assumption that the methamphetamine involved in this case was d-methamphetamine and not l–methamphetamine. Absent · unusual circumstances not shown to be present here, establishment of ineffective assistance of counsel satisfies cause and prejudice. *United States v. Patten,* 40 F.3d 774 at 776 (5th Cir.1994). To establish that his counsel was constitutionally ineffective, Acklen must show both that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense. *Id.* An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable. *Clark v. Collins,* 19 F.3d 959, 964 (5th Cir.1994). With respect to prejudice in the context of noncapital sentencing, the habeas court must determine whether there is a probability that, but for counsel's deficiency, the defendant's sentence would have been significantly less harsh. *Spriggs v. Collins,* 993 F.2d 85, 87 (5th Cir.1993).

As to prejudice, Acklen alleged that, had counsel objected to the assumption that the drug involved was d- as opposed to l–methamphetamine, his sentence would have been far less severe. The basis for Acklen's allegation that the methamphetamine involved was in fact l–methamphetamine is wholly unclear; apparently, this allegation is nothing more than an inference drawn from the government's failure to produce a lab report, a report which Acklen has never seen but presumes can "conclusively" determine the type of methamphetamine involved.[6] Recognizing

---

**4.** To the extent Acklen's motion is grounded on the government's failure to prove, and the district court's failure to find, at sentencing, that the substance involved was actually d-methamphetamine, the absence of an objection at sentencing or on appeal operates as a procedural bar. *See United States v. Deninno,* 29 F.3d 572, 580 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). The government bears the burden of proving that the substance involved was methamphetamine only after the defense has raised the issue at sentencing. *United States v. Koonce,* 884 F.2d 349, 353 (8th Cir.1989). This argument cannot now be raised in the context of a section 2255 motion.

**5.** This reference to l–methamphetamine appears only in the Drug Equivalency Tables in the commentary to section 2D1.1. In contrast, the Drug Quantity Tables, under section 2D1.1(c), refer only to "methamphetamine" and "methamphet-

amine (actual)," which means d-methamphetamine (or possibly dl–methamphetamine, a matter we do not here determine). *See Bogusz,* 43 F.3d at 89 & nn. 10 & 11. This case does not present and we express no opinion on the question discussed in *United States v. Carroll,* 6 F.3d 735, 743–45 (11th Cir.1993), as to whether "pure" l–methamphetamine can be "Pure Methamphetamine" for purposes of section 2D1.1(c).

**6.** Acklen alleged that "[h]ad petitioner's counsel conducted a proper investigation, he would have found that there was conclusive evidence available that the 'methamphetamine' involved was Levo—as opposed to Dextro—methamphetamine, and petitioner would have received a substantially lower term of imprisonment." There is no statement of what the "conclusive evidence" is or how Acklen knows of it or any indication of any basis for his belief as to the character of the methamphetamine.

that "petitioner was indeed prejudiced *if* the substance involved was L-methamphetamine," the district court assumed "that the substance involved in this crime was indeed L-methamphetamine." Nevertheless, the court concluded that Acklen had failed to demonstrate that his trial counsel had acted unreasonably.

Unlike the district court, we are not convinced that this record demonstrates as a matter of law that Acklen's trial counsel's performance in this case was not deficient. Although, at the time of sentencing, there was very little case law on the distinctions between d- and l–methamphetamine, the commentary to section 2D1.1 of the Sentencing Guidelines explicitly distinguishes l–methamphetamine from other isomers—a distinction upon which turns a remarkable difference in sentencing liability. *See United States v. Lande*, 40 F.3d 329, 330 n. 1 (10th Cir.1994). Merely reading the commentary

to the rule would have alerted counsel to the potentially significant impact on sentencing that the type of isomers involved can have. Moreover, the issue had by then been addressed in *United States v. Koonce*, 884 F.2d 349, 353 (8th Cir.1989).[7]

Because we cannot say that this record demonstrates as a matter of law that counsel acted reasonably in this case,[8] we must consider whether Acklen has established prejudice, something the district court assumed *arguendo*. We agree with the district court that prejudice occurred *if*, as Acklen alleges, the drug involved was actually l–methamphetamine.[9] However, we do not regard Acklen's mere conclusory allegation that "conclusive evidence" exists that the methamphetamine was l (see note 6, *supra*), as being sufficient to establish that, or put in genuine issue whether, the substance was l–methamphetamine, absent which no prejudice would be shown.[10] *See United States v.*

Acklen's brief on this appeal asserts in several places that at the time of trial and sentencing he "had no idea of what type of 'Methamphetamine' was actually involved" and "is not personally knowledgeable of the process for making any type of methamphetamine." We find no support in the record for the district court's statement in its ruling denying section 2255 relief that Acklen asserted "that he informed his attorney of the discrepancy in the drug types with which he was charged," and that "he repeatedly requested his attorney to explore this issue." Acklen alleged that at his sentencing he was unaware that the Guidelines treated different types of methamphetamine differently. Acklen's brief in the present appeal does assert that "[i]n the street vernacular, most people refer to" d-methamphetamine "as simply 'methamphetamine.'"

As reflected in our direct appeal opinion, "[a]t sentencing, Acklen objected to the PSIR. First, he argued that the PSIR did not report that he was a drug addict and dependent on methamphetamine. According to Acklen, this addiction allowed Horace Ashley, a co-conspirator, to coax Acklen into the conspiracy [to manufacture and distribute methamphetamine]." This would seem to suggest that d-methamphetamine was involved as l–methamphetamine "produces little or no physiological effect when ingested." *Bogusz*.

7. The first reference to this issue in a published opinion of this Court appears to be in *United States v. Evans*, 941 F.2d 267, 273 (5th Cir.1991). The only other is in *United States v. Shaw*, 30 F.3d 26, 29 (5th Cir.1994).

8. Of course, a more complete record might reflect that counsel did adequately investigate or the like.

9. Had the standards for l–methamphetamine been applied, Acklen's sentence would have ranged from 108 to 135 months, as opposed to the 240 month sentence imposed and the 262–327 month range calculated in the PSI. The l–methamphetamine sentence is thus significantly less harsh. *See Spriggs*, 993 F.2d at 88. The government contends that Acklen cannot show prejudice because he specifically agreed to a twenty-year term of imprisonment. The plea agreement, however, like the PSI's Guidelines calculation, was premised on the involvement of d-methamphetamine. In any event, Acklen did not agree to a twenty-year sentence; the plea agreement merely acknowledged (perhaps wrongly) that twenty years was the maximum term under the statute. *See* footnote 2, *supra*.

10. With respect to his *Brady* and perjury claims, Acklen has likewise failed to substantiate his allegation that the lab report retained by the government contained any reference to the type of methamphetamine and, even if it did, that the identified isomer was l-methamphetamine. It is plausible that any lab report on the substance seized in this case merely identifies the drug as methamphetamine without specifying the isomer type, *see United States v. Carroll*, 6 F.3d 735, 749 (11th Cir.1993) (where government report did not specify isomer type), *cert. denied*, — U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994), especially since the identification of isomers requires "more sophisticated" testing. *United States v. Patrick*, 983 F.2d 206, 208 (11th Cir. 1993).

744

*Auten,* 632 F.2d 478, 480 (5th Cir.1980) ("[C]onclusory allegations do not support the request for an evidentiary hearing."); *see also Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir.1990); *Battle v. United States Parole Commission,* 834 F.2d 419, 421 (5th Cir. 1987). Nevertheless, in the particular context of this appeal, we believe affirmance on that basis would be improper. Not only did the district court proceed on the assumption that the l–methamphetamine was the drug involved, but there was no clear challenge below to the nature of Acklen's allegations in that regard nor any opportunity afforded him to remedy the deficiencies therein. On remand, Acklen should tender some specific, verified basis or evidence, beyond his mere naked assertion or belief, that the drug was in fact l–methamphetamine.[11] If Acklen makes such a showing, he may be entitled to limited discovery and an evidentiary hearing.

### Conclusion

The judgment of the district court is VACATED and the cause is REMANDED.

_____

11. And, mere absence of the lab report does not    suffice for this purpose.