**UNITED STATES of America**

v.

**Jeffrey R. ACKLEN.**

**Crim. No. 90–50007.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

Dec. 5, 1995.

---

**25.** USF & G's memorandum in support, pp. 21–22.

**26.** USF & G's memorandum in support, p. 24.

**27.** N. 15, *supra*.

Robert Watts Gillespie Jr., Assistant United States Attorney, Shreveport, LA, for U.S.

Marcia G. Shein, Atlanta, GA, for Acklen.

### MEMORANDUM RULING

STAGG, Judge.

Before the court is Jeffrey Acklen's ("Acklen") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. After an evidentiary hearing and a full consideration of the law and the evidence, for the reasons set forth below, Acklen's *habeas corpus* petition is **DENIED.**

### I. BACKGROUND

On January 25, 1990, a federal grand jury returned a twelve count indictment charging Acklen and his seven co-defendants with a variety of drug trafficking offenses. Acklen entered a plea of guilty to one count of conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and to one count of distributing 14.5 ounces of methamphetamine in violation of 21 U.S.C. § 841(a). Acklen's offense level was calculated to be 38. The sentencing guidelines provided a range of 262 to 327 months' imprisonment. Pursuant to the plea agreement, however, the court sentenced Acklen to 240 months of imprisonment and six years of supervised release. Acklen appealed and the Fifth Circuit affirmed the conviction. *See United States v. Acklen,* 933 F.2d 1004 (5th Cir.1991).

Acklen then filed this *habeas corpus* petition to vacate, set aside or reduce his sentence for conspiracy to distribute methamphetamine, alleging ineffective assistance of counsel. Acklen argues that his attorney's performance was deficient because the attorney did not object at sentencing when Acklen was sentenced based on dealing in d-methamphetamine. Furthermore, Acklen argues

that had his attorney objected at sentencing, he would have been able to show that the object of the conspiracy was l-methamphetamine, rather than d-methamphetamine. This court denied his motion and Acklen appealed. The Fifth Circuit vacated this court's ruling because it was not convinced that the record demonstrated as a matter of law that Acklen's trial counsel was not deficient. *See United States v. Acklen,* 47 F.3d 739, 743 (5th Cir.1995). At the time of sentencing there was very little case law regarding the distinctions between d- and l-methamphetamine. *See id.* Section 2D1.1 of the Sentencing Guidelines explicitly distinguishes l-methamphetamine from other isomers; a distinction that makes a remarkable difference in sentencing liability. *See id.* The Fifth Circuit held that merely reading the commentary to the rule would have alerted Acklen's attorney to the potentially significant impact on sentencing that the difference in isomers could make. *See id.* Furthermore, the case was remanded with instructions that this court allow Acklen a chance to:

> "tender some specific, verified basis or evidence, beyond his mere naked assertion or belief, that the drug [involved in the conspiracy] was in fact l-methamphetamine. If Acklen makes such a showing, he may be entitled to limited discovery and an evidentiary hearing."

*United States v. Acklen,* 47 F.3d 739, 744 (5th Cir.1995).

Upon remand to this court, Acklen requested an evidentiary hearing. At that point, however, he had not come forth with the proof required in the Fifth Circuit's remand instructions. Acklen asserted that the Fifth Circuit must have erred in placing the burden of proof upon him, arguing that the burden should, in fact, fall upon the government. *See* Defendant's Reply in Support of Motion for Hearing, at page 2 (August 23, 1995). This court then issued the following order:

> The United States Fifth Circuit Court of Appeals has remanded the present case to this court, giving the following instructions:
>
> On remand, Acklen should tender some specific, verified basis or evidence, be-

yond his mere naked assertion or belief that the drug was in fact l-methamphetamine. If Acklen makes such a showing, he may be entitled to limited discovery and an evidentiary hearing.

*United States v. Acklen,* 47 F.3d 739, 744 (5th Cir.1995). Furthermore, the court stated that the "mere absence of the lab report does not suffice for this purpose." *Id.*

Acklen requests the court to grant an evidentiary hearing. Yet he has not offered, to this point, any evidence. Rather, he has only pointed out to the court that, *inter alia,* the government failed to meet its burden at sentencing. In fact, Acklen states that the Fifth Circuit "may have erred in attempting to shift the burden to the Defendant to make some type of showing as to the potential for the methamphetamine in question to be l-methamphetamine." *See* Defendant's Reply in Support of Motion for Hearing, at page 2 (August 23, 1995).

This court obviously can not and would not disregard, much less overrule, a directive issued from the Fifth Circuit. Thus, having received no evidence in support of Acklen's claim for ineffective assistance of counsel, his § 2255 petition could easily be denied at the present moment. Nevertheless, the court will allow Acklen an evidentiary hearing so that he may be given one last opportunity to prove his claim.

Rec.Doc. 328 (August 31, 1995).

### II. LAW

■ To prevail on his claim of ineffective assistance of counsel, Acklen must establish (1) the attorney's deficient performance, and (2) prejudice flowing from that deficiency. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Contrary to Acklen's assertion that the government bears the burden of proof in this *habeas* proceeding, it is the petitioner seeking relief on this basis who maintains the burden of demonstrating both of these elements. *See Carson v. Collins,* 993 F.2d 461, 465 (5th Cir.), *cert. denied,* — U.S. —, 114` S.Ct. 265, 126 L.Ed.2d 217 (1993). To satisfy the

first *Strickland* prong, Acklen must demonstrate attorney performance outside the wide range of reasonable professional assistance, and must overcome a presumption of adequacy. *See Strickland,* 466 U.S. at 699, 104 S.Ct. at 2070. If able to negotiate this first obstacle, Acklen must further demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

## III. ANALYSIS

### A. Distinguishing d- And l-Methamphetamine

Acklen's constitutional claims center around the assumption that l-methamphetamine was the object of the conspiracy, rather than d-methamphetamine. Before the court delves into the merits of Acklen's claim, some background regarding the differences between d- and l-methamphetamine will aid the understanding of this analysis.

D- and l-methamphetamine are stereoisomers of methamphetamine; they consist of identical molecules differently arranged. *See Acklen,* 47 F.3d at 742, *citing United States v. Bogusz,* 43 F.3d 82 (3rd Cir.1994).[1] For purposes of conviction, the difference between the isomers is irrelevant; section 841 does not distinguish among types of methamphetamine. *See id., citing United States v. Deninno,* 29 F.3d 572 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). For purposes of the Sentencing Guidelines, however, l-metham-

phetamine is specifically distinguished from all other types of methamphetamine. *See id.* Because l-methamphetamine is "grossly different" from other forms of methamphetamine, in that l-methamphetamine "produces little or no physiological effect when ingested," the Guidelines' Drug Equivalency Tables treat it far less severely. *See id.* This difference between d- and l-methamphetamine is reflected in the Guidelines' Drug Equivalency Tables by a factor of 250 to 1. *See United States v. Bogusz,* 43 F.3d 82, 88 (3rd Cir.1994).

Acklen contends that had he been sentenced on the basis of conspiracy to produce l-methamphetamine, his total offense level would have been 28. The range provided by the sentencing guidelines would have been 87 to 108 months. Therefore, had Acklen's sentence been calculated using l-methamphetamine instead of d-methamphetamine as the object of the conspiracy, his term of imprisonment would have been a maximum of nine years. This is less than half the term Acklen received pursuant to his plea agreement.

### B. The Evidentiary Hearing

In support of his argument, Acklen called Dr. James Booker, who was admitted by the court as an expert in the field of chemistry. Dr. Booker testified that the chemicals Acklen purchased could produce l-methamphetamine. These chemicals, however, could not produce *only* l-methamphetamine. Dr. Booker testified that, in fact, the chemicals used to make only l-methamphetamine were

---

1. The Third Circuit in *Bogusz* provided the following explanation regarding the distinctions between d- and l-methamphetamine:

    Discussion of the principles of organic chemistry that underlie this issue is necessary before the problem created by the distinction between D- and L-methamphetamine can be understood.

    The methamphetamine molecule, like most organic molecules, exists in different "isomeric" forms. Isomers "are compounds that have the same molecular formula but different structural formulas." Just as people are either right- or left-hand dominant, a molecule can sometimes exist in right- and left-handed forms. A molecule "that exhibits the property of handedness" is called a chiral molecule. The two forms of the chiral molecules are called enantiomers.

    Each enantiomer is labelled either Dextro or Levo, or D or L. The difference is determined by the optical rotation of light. D is right-handed and L is left-handed. One is the mirror image of the other; that is, they are mirror symmetrical. Although enantiomers only differ with respect to chirality, the human body "is highly sensitive to enantiomeric differences." For example, the thalidomide birth defects of the 1960's resulted because one enantiomer of thalidomide stopped morning sickness while the other caused birth defects.

    Methamphetamine exists in these two isomeric forms. L-methamphetamine is a compound that produces little or no physiological effect when ingested. D-methamphetamine, on the other hand, produces the physiological effect desired by its users.

    *Bogusz,* 43 F.3d at 88–89 (citations omitted).

not present in this case. The chemicals Acklen purchased were: phenylacetic acid ("PA"), sodium acetate ("SA"), and acetic anhydride ("AA"). These chemicals can be used to produce phenyl 2 propanol or phenylacetone ("P2P"). Dr. Booker testified that P2P is a precursor chemical used to make what is known as dl-methamphetamine. Dl-methamphetamine is a mixture of 50% d-methamphetamine and 50% l-methamphetamine. According to Dr. Booker, the chemicals Acklen purchased could not produce l-methamphetamine only, but rather could produce dl-methamphetamine, which has nearly the same effect on its users as pure d-methamphetamine.

The government also produced an expert witness in forensic chemistry, Dr. William Glanville. Dr. Glanville has been employed at the Drug Enforcement Agency ("D.E.A.") laboratory in Dallas, Texas for seven years. While employed there he has instructed classes on the illegal production of methamphetamine in clandestine labs. Dr. Glanville likewise testified that the reaction of PA, SA, and AA will produce P2P, the precursor chemical to dl-methamphetamine. Dr. Glanville testified that once this reaction was complete, the l-methamphetamine could not be separated out. If one wanted only l-methamphetamine, then it would be more efficient to produce it from using other chemicals that were not present in this case. Dr. Glanville testified that d and dl-methamphetamine both produce nearly the same effect on a user of the drug. Essentially, l-methamphetamine alone could not be made from the chemicals present here.

Acklen also asserts there is a "market" for l-methamphetamine. Therefore, he claims it would be perfectly normal for him to produce l-methamphetamine in a clandestine laboratory. Based on the testimony presented at the evidentiary hearing, this argument falls short. Dr. Booker did testify that there is "*a* market" for l-methamphetamine. He did not, however, say what type of market exists for l-methamphetamine. Nor did Dr. Booker say there was a "street market" for l-methamphetamine. On the other hand, Mike Hembree, a special agent with the Drug Enforcement Division with 21 years experience

in narcotics law enforcement, testified there is no "street market" for l-methamphetamine. Dr. Glanville also testified that in his years of experience with the D.E.A. lab, he had never seen, nor heard about, a clandestine laboratory used to produce only l-methamphetamine. Dr. Glanville testified that the only market he knew of for l-methamphetamine was for use in Vicks Nasal Inhalers. According to Dr. Glanville, l-methamphetamine is not produced in clandestine labs and then sold to Vicks for use in its nasal inhalers.

### C. Acklen Has Not Met His Burden Of Proof

Based on the testimony above, Acklen has not met his burden of proving that he conspired to produce *only* l-methamphetamine. The chemicals Acklen used will not produce only l-methamphetamine, but rather, will produce dl-methamphetamine. There is no real "street market" for l-methamphetamine. Furthermore, to produce only l-methamphetamine, Acklen would need other precursor chemicals not present in this case. The government has shown, although it was not required to, that by using the chemicals purchased by Acklen, the object of the conspiracy was dl-methamphetamine.

Thus, under *Strickland,* the prejudice prong has not been satisfied. Even assuming *arguendo* that Acklen's trial counsel was deficient, no relief may be afforded to Acklen.

### D. As A Matter Of Law, Prejudice Prong Is Not Satisfied

Alternatively, the court notes that a recent Fifth Circuit case may foreclose Acklen's argument. As stated above, to satisfy the prejudice prong of *Strickland,* Acklen must establish a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh. *See United States v. Seyfert,* 67 F.3d 544 (5th Cir.1995). In *Seyfert,* the Fifth Circuit, under substantially similar facts as the present case, followed the holding in *Acklen* as to the attorney performance prong of *Strickland.* But, it was found that Seyfert

had not satisfied the prejudice prong of *Strickland.* The court reasoned:

> To find that Seyfert had established this prejudice, we would have to find that ... he would have gone beyond what we are today prepared to find reasonable and would have raised this novel sentencing issue regarding the amount of d-methamphetamine found in the d,l-methamphetamine. Then, despite the absence of case law on the subject, the sentencing judge would have had to accept counsel's argument. We do not find that such a tenuous likelihood rises to the level of "reasonable probability."

*Id.* at 549.

This logic applies to the present case. Had Acklen's attorney raised this issue at sentencing, based on the absence of case law on the subject, this court would not have accepted counsel's argument. Such a negligible possibility does not rise to the level of a "reasonable probability" that, but for the deficient performance of Acklen's trial counsel, his sentence would have been significantly less harsh. *See id.*

Therefore, Acklen's *habeas corpus* petition is **DENIED.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

### *ORDER*

Based on the foregoing Memorandum Ruling:

**IT IS ORDERED** that Jeffrey R. Acklen's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, be and is hereby **DENIED.**