United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 9, 2006**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 23, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-70004

_____

JUSTIN CHAZ FULLER

Petitioner-Appellant

versus

DOUG DRETKE, DIRECTOR, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL

JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:03-cv-01416-TH)

_____

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

Fuller was convicted of capital murder on March 4, 1998 and subsequently sentenced to death in the 241st District Court of Smith County, Texas. Fuller's direct appeal was denied by the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Texas Court of Criminal Appeals, as was his first state application for post-conviction relief. Fuller filed an application for a writ of habeas corpus in the U.S. District Court for the Eastern District of Texas, but dismissed the application in order to return to state court. His second state application was denied and Fuller once again filed a habeas application in district court. Again, he dismissed the federal application and returned to state court a third time. Fuller's third state application for post-conviction relief was dismissed and Fuller subsequently filed a third application in district court, raising twenty six claims.

The district court denied Fuller's habeas petition, but later granted Certificate of Appealability ("COA") on four issues: (1) whether the trial court erred in not allowing Fuller to present evidence of the relative culpability of a co-perpetrator during the punishment determination phase of his trial; (2) whether the trial court erred in refusing to allow a witness to discuss future dangerousness in the context of life in prison; (3) whether the prosecution improperly excluded venirepersons on the basis of their race; and (4) whether the district court's refusal to consider the merits of Fuller's fourteenth through twenty-sixth claims because they are procedurally defaulted resulted in a miscarriage of justice. We AFFIRM the district court's denial of Fuller's petition for habeas corpus relief.

**BACKGROUND**

On April 21, 1997, Petitioner Justin Fuller and three friends kidnaped Donald Whittington from his apartment, made him withdraw money from an ATM, then drove him to a wooded area and shot him once in the arm and twice in the head, killing him. That evening, Fuller took two high school students to see Whittington's body and told them what had happened. Those two students invited Kevin Ballard, Kevin's brother, and three other youths to view the body the next day. Later, Kevin saw on a television broadcast that Whittington's body had been discovered, and he contacted the police and led them to the body. The police interviewed the youths and were told what Fuller had said about killing Whittington. After searching Fuller's dwelling, the police found Whittington's ATM card in Fuller's wallet and his watch in Fuller's living room. After being arrested, Fuller confessed to being involved in the crime, but denied being the trigger man. Fuller was subsequently convicted of capital murder and sentenced to death. He brings this habeas petition to challenge several happenings during the pre-trial, trial, and punishment phases of his case.

**STANDARD OF REVIEW**

This Court applies the same standard of review to the state court's decision as does the district court. In reviewing Fuller's constitutional claims that have been adjudicated on the merits by state court, habeas relief may not be granted unless the state

3

court decision was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is contrary to Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412.

## DISCUSSION

### I. Evidence of Co-Perpetrator's Moral Culpability

During the trial and the punishment phase, Fuller's defense counsel repeatedly attempted to introduce evidence of the moral culpability of separately tried co-perpetrator Samhermendre Wideman. Fuller wanted to demonstrate Wideman's propensity to violence and that Wideman was the organizer of the crime, thus diminishing Fuller's role in the offense. The trial court excluded the evidence because it had no probative value. Fuller argues that he was denied the opportunity to present a co-defendant's relative

4

culpability as a mitigating factor in the punishment phase of trial, in violation of *Penry v. Lynaugh*.[1] We disagree.

*Penry* held that the "Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to decline to impose the death sentence." 492 U.S. at 327. As the district court correctly noted, the trial court did not prohibit Fuller from introducing evidence of Wideman's culpability for the crime at issue. Rather, the trial court refused to admit evidence of Wideman's character and background during Fuller's punishment phase. Certainly, *Penry* holds that a "jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." *Id.* at 328. However, *Penry*'s holding is based on a general evidentiary standard of relevance, and, under such a standard, information about Wideman's character and background have little, if any, relevance to Fuller's character and background. *See Tennard v. Dretke*, 542 U.S. 274, 284 (2004). Therefore, the state court's rejection of this claim was not contrary to, or an unreasonable application of, the Supreme Court's precedent concerning mitigating evidence and the death penalty.

## II. Future Dangerousness and Life in Prison

During the punishment phase, Fuller sought to introduce the

---

[1] 492, U.S. 302 (1989).

testimony of Larry Fitzgerald, the Director of Information for the Texas Department of Criminal Justice, Institutional Division, to speak to the future dangerousness special issue. In prohibiting Fitzgerald from testifying, the trial court determined that Fitzgerald would only have testified to the details and procedures of an actual execution, which the trail court deemed irrelevant to the Texas special issues. Fuller maintains that to exclude Fitzgerald's testimony in this way denied his right to due process and a fair trial.

The record demonstrates that the trial court's determination about the substance of Fitzgerald's testimony was correct. The trial court allowed the defense to summarize the content of Fitzgerald's testimony in order to determine whether that testimony was relevant. The defense explained that Fitzgerald would describe the days leading up to the execution date, the execution itself, and what happens afterwards. Defense counsel also said that Fitzgerald would offer into evidence a standard press release that goes along with executions. In light of the evidence before it, the trial court made a reasonable determination of the facts. Given the court's factual determination (that Fitzgerald would be testifying about how an execution is carried out), the state court did not apply the law unreasonably when it ruled that such testimony was not relevant to the special issues. The method used in executing prisoners, though it may turn some jurors against the

death penalty, does not have any relevance as to whether Fuller would be dangerous in the future, whether he acted deliberately, or to any mitigating circumstance of the crime or Fuller's character.[2] The defendant hasn't shown any unreasonableness on the part of the trial court regarding this issue that would warrant habeas relief.

## III.  The Merits of Fuller's *Batson* Challenge

Fuller claims that the prosecutor impermissibly exercised his peremptory challenges on the basis of race, in violation of *Batson v. Kentucky*.[3]  In *United States v. Seals*[4], this Court reiterated the three-step process for *Batson* challenges:

> First, the defendant [or any litigant] must make a prima facie showing that the prosecution [or other party] exercised peremptory challenges on the basis of a juror's cognizable racial background.  Second, the burden shifts to the prosecution [or challenged party] to articulate a race-neutral explanation for removing the juror in question.  Finally, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination.

---

[2] See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

[3] 476 U.S. 79, 89 (1986).

[4] 987 F.2d 1102, 1108 - 09 (5th Cir. 1993).

Here, The trial court held that the defense established a prima facie case of racial discrimination by objecting to the prosecutor's striking of six of the seven black potential jurors. The prosecution then articulated race-neutral reasons for challenging the black venirepersons. Defense counsel cross-examined the prosecutor about his questioning of minority jurors, and the trial court ultimately denied the *Batson* motion. The Texas Court of Criminal Appeals affirmed the decision.

The state court was not unreasonable in its determination that the prosecution's race neutral reasons were not pretextual and used to mask discriminatory intent. The state court found that:

The prosecution struck Juror Pace because she opposed the death penalty, Juror Nichols because of his opposition to the death penalty and for his relationship to a known drug dealer, Juror Campbell because of her opposition to the death penalty, Juror Dixon because he thought the death penalty should never be invoked and because [Fuller] mentioned Dixon's brother in a letter, Juror Busby because he stated that he believed youthful offenders could not grasp the effect of their conduct, and Juror Gossett because of opposition to the death penalty and his friendship with a convicted murderer...The State articulated plausible race related neutral explanations for its peremptory elimination of

8

the six black venire members: none seemed patently contrived or disingenuous.[5]

Fuller claims that the State's reasons were not honest given the history of Smith County prosecutors questioning minority potential jurors differently from white ones. However, the record supports the state court's factual determination regarding the State's race-neutral reasons for striking the jurors at issue. The prosecutors' reasons are supported by the verbal and written answers given by the potential jurors during voir dire. Therefore, the state court's factual determination that the prosecutors' reasons were not pretext for racial discrimination was reasonable given the evidence before the court.

Fuller also argues that the Texas Court of Criminal Appeals made a decision contrary to federal law because the court used the phrase "patently contrived or disingenuous" in denying the *Batson* challenge. Fuller contends that this is a higher standard than the "dishonest" standard required by federal law. However, as the district court noted, it is not convincing that "'disingenuous' has a significantly different meaning from 'dishonest'". The state court applied the correct legal standard, and there is no reason to warrant habeas relief on this issue.

## IV.  Procedurally Defaulted Claims

---

[5] *Fuller v. State*, No. 73, 106 (Tex. Crim. App. Dec. 20, 2002) Slip op. p. 13.

9

Fuller brought a 26-claim habeas petition before the district court in which claims fourteen through 26 were raised for the first time in a successive state court habeas petition. Because the claims were not raised in Fuller's first state court post-conviction petition, the state court held that claims fourteen through twenty-six were procedurally barred and dismissed them as an abuse of the writ. The district court granted COA on the procedurally defaulted claims for this court to determine whether the district court's refusal to consider the merits of those claims resulted in a miscarriage of justice. However, Fuller only addresses five of those procedurally defaulted claims in his petition before this court, therefore, his other claims are deemed abandoned.[6] Those remaining claims are: (1) his trial counsel rendered ineffective assistance by serving under a conflict of interest; (2) his attorney rendered ineffective assistance by failing to communicate a plea offer to him; (3) the trial court's error in finding that Fuller had a right to competent habeas counsel now entitles Fuller to bring an ineffective assistance claim against his habeas counsel ; (4) the prosecutors presented false and misleading testimony in explaining their use of peremptory strikes during the *Batson* hearing, following a pattern

---

[6] *See Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999); *see also* Fed.R.App. P. 28(a)(9); *see also Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

10

of discrimination against Black jurors in Smith County that goes beyond the issues raised on direct appeal; and (5) Fuller's actual innocence.

Claims that are defaulted at the state level are barred from review on the federal level unless the defendant shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice."[7]  "Cause is defined as 'something external to the petitioner, something that cannot be fairly attributed to him' that impedes his efforts to comply with the [state] procedural rule."[8] To establish a "miscarriage of justice" exception, Fuller must demonstrate actual innocence.[9]

The district court only granted COA on whether its refusal to consider the merits of Fuller's defaulted claims resulted in a miscarriage of justice.  It did not grant COA on whether Fuller demonstrated cause for default and actual prejudice resulting the violations.  However, in his appellate brief, Fuller does address

---

[7] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[8] *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004), citing, *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996).

[9] *Coleman*, 501 U.S. at 748, citing, *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

11

the cause and prejudice standard. Though Fuller has not specifically asked this Court for a COA on the issue of cause and prejudice on his procedurally defaulted claims, we construe his appeal raising these issues as such a request.[10] A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."[11] In death penalty cases, "any doubts as to whether COA should be issued must be resolved in the petitioner's favor."[12] Fuller's case, being a death penalty case in which he raises constitutional issues that were procedurally barred, satisfies the requirements for a COA regarding whether Fuller has fulfilled the cause and prejudice standard of the procedurally defaulted claims that he has not abandoned. Therefore, we grant COA to determine whether cause for the procedural defaults exist and whether Fuller was prejudiced by the alleged violations.

**(1) Ineffective Assistance of Counsel: Conflict of Interest**

The district court did not address whether Fuller met the

---

[10] *See Allen v. Musgrove*, 96 Fed.Appx. 957 (5th Cir. 2004) ("Although [defendant] has not requested COA to appeal the dismissal of his habeas corpus claims, this court may construe his notice of appeal as such a request.); *see also Mosley v. Johnson*, 192 F.3d 126 (5th Cir. 1999) ("We construe [defendant's] notice of appeal as a motion for COA.").

[11] 28 U.S.C. § 2253(c)(2).

[12] *Matchett, 380 F.3d* at 848, citing, *Bigby v. Cockrell*, 340 F.3d 259, 265-66 (5th Cir. 2003).

cause and prejudice standard for the procedurally defaulted claims because it held that Fuller's "cause" for the default was the ineffective assistance of habeas counsel. The district court was correct in holding that ineffective assistance of habeas counsel cannot constitute cause to overcome procedural default.[13] However, Fuller also raises claims of ineffective assistance of trial counsel. Therefore, we will apply the usual ineffective assistance of counsel analysis to this first procedurally defaulted claim.

"[A]bsent unusual circumstances, ineffective assistance of counsel, if shown, is sufficient to establish the cause and prejudice necessary to overcome a procedural default."[14] However, to show ineffective assistance of counsel, Fuller must prove: (1) that his counsel's performance was deficient (cause); and (2) that the deficient performance prejudiced his defense (prejudice).[15] "An attorney's performance, which employs a strong presumption of adequacy, is deficient if it is objectively unreasonable."[16] Further, counsel's deficient performance prejudiced the petitioner's defense if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

---

[13] *See Matchett*, 380 F.3d at 849; *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001).

[14] *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), citing, *United States v. Aklen*, 47 F.3d 739, 742 (5th Cir. 1995).

[15] *See Strickland v. Washington*, 466 U.S. 668 (1984).

[16] *Aklen*, 47 F.3d at 742.

13

reliable."[17]

Fuller explains that Donald Killingsworth was appointed to represent him in his state criminal trial. Killingsworth enlisted the assistance of James Volberding, an attorney who had little to no significant criminal law experience and was not on the approved list of second chair counsel for capital cases. On October 1, 1997, prior to jury selection, Killingsworth was suspended from the practice of law for failure to pay dues to the State Bar of Texas. Volberding took over as lead counsel on Fuller's case until Killingsworth was re-instated on October 21, 1997. Volberding drafted a letter to Fuller explaining that Killingsworth had a potential conflict of interest because he would be defending Fuller against David Dobbs, a prosecutor who was also enlisted against Killingsworth regarding his practice without a license. The letter advises that, because the situation regarding Killingsworth's practice without a license was likely to be resolved without prosecution, Fuller did not need to seek appointment of new counsel and should waive the conflict. Fuller claims that the letter was never sent to him.

The record also contains various motions and memoranda in which Volberding sought advice from the court as well as from other attorneys as to what his role was in the defense of Fuller and what

---

[17] *Strickland*, 466 U.S. at 687.

14

he should do about Killingsworth's perceived conflict. The record contains memos written by Volberding in which Volberding indicates that he was being overwhelmed by picking up the slack for Killingsworth and that he believed that Killingsworth was not providing effective assistance. However, in a memo written to himself on December 18, 1997, Volberding stated that Killingsworth's performance had improved and that the problem was eliminated. On December 29, 1997, a few weeks before jury selection, Killingsworth notified the court of the conflict and the court received assurance from the prosecution that Killingsworth was not facing indictment.

Fuller argues that his counsel rendered ineffective assistance, thus violating his Sixth Amendment right, by not disclosing to him the potential conflict and by leaving Volberding, inexperienced in criminal trials, to act as both first and second chair. While the record appears to show that Killingsworth's performance was deficient during a portion of the pre-trial phase of Fuller's case, Fuller has not demonstrated that the deficient performance prejudiced his defense. Volberding's own notes show that Killingsworth's performance improved after a short lapse. Further, the potential conflict of interest was disclosed to the trial court and was promptly resolved. Therefore, on this claim of ineffective assistance of counsel, Fuller cannot prove that Killingswoth's deficiency and his conflict of interest were so

15

serious as to have deprived Fuller of a fair trial.

**(2) Ineffective Assistance of Counsel: Failure to Disclose Plea Agreement**

Fuller claims that his trial counsel failed to relay a plea agreement offer, thus violating his Sixth Amendment right to effective counsel. The record contains a memorandum in which Volberding states that, around January 29, 1998, the prosecutor approached Killingsworth and Volberding and suggested that they talk to Fuller about pleading to a life sentence. Both Volberding and Killingsworth doubted the sincerity of the prosecutor's offer, nonetheless, Volberding advised Killingsworth to communicate the plea offer to Fuller in writing. Volberding also advised that the written communication to Fuller should make clear that the prosecutor was not planning to make a real offer. The memo states, "To my knowledge, as of this date, [Killingsworth] has not discussed the matter with [Fuller], nor sent a letter."[18] Volberding concludes his notes by indicating that there had been no further indication from the prosecutor that a plea was possible.

In *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995), the Court "agree[d] that failing to inform the defendant of a plea offer could amount to ineffective assistance of counsel." In Fuller's case, the evidence suggests that Killingsworth's

---

[18] Federal Court Record at 93.

16

performance may have been deficient in not discussion the plea possibility with Fuller. However, it is less clear that Fuller suffered any actual prejudice as a result of this failure. The evidence suggests that the prosecutor never sincerely intended to enter into any sort of plea bargain with Fuller for a life sentence. The State provided the district court with affidavits of Don Killingsworth (Fuller's trial attorney) and David Dobbs (the trial prosecutor), in which both assert that a plea for life was never seriously offered. Therefore, there is sufficient evidence to conclude that Fuller was not deprived of a fair trial by not being told of a disingenuous mentioning of a plea for a life sentence by a prosecutor who had no intention of agreeing to such a plea. Consequently, Fuller is not entitled to habeas relief on this issue

**(3) Ineffective assistance of habeas counsel**

Fuller contends that he was deprived the effective assistance of habeas counsel to which the state court concluded he was entitled. According to Fuller, under the law of the case doctrine, state law guaranteed him the right to assistance of constitutionally effective post-conviction counsel. However, even if the state court did conclude that state law entitled Fuller to effective habeas counsel, ineffective assistance of counsel during post-conviction proceedings cannot constitute cause to excuse a

17

procedural default.[19]  Therefore, Fuller cannot overcome the cause and prejudice requirements to revive this procedurally defaulted claim.

**(4) Smith County's pattern of discrimination against Black jurors**

Fuller alleges that there is a history of purposeful racial discrimination in the selection of juries in Smith County. According to Fuller, the prosecutors in his case presented false and misleading testimony in explaining their use of peremptory strikes during the *Batson* hearing, following the pattern of discrimination against Black jurors that has been used repeatedly in Smith County.  It is unclear from Fuller's brief whether he is bringing a claim against Smith County as a whole; or if he is referring to the history of Smith County's voir dire practices as a way to bolster his previously-made claim that the prosecutors' race neutral reasons for striking Black jurors were pretext. However, in either scenario, Fuller has not addressed the cause and prejudice standard for this procedurally defaulted claim.  Even if this Court were to reach the merits of this claim, a habeas petition is not the proper forum in which to bring a claim of discrimination against the county.  If Fuller merely meant to

---

[19] *See Matchett*, 380 F.3d at 849, citing *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003) and *Martinez c. Johnson*, 255 F.3d 229, 239-41 (5th Cir. 2001).

reiterate his *Batson* challenge against the prosecutors' use of peremptory challenges, then his claim fails for the reasons given above in section III. However this issue is construed, it does not warrant habeas relief.

### (5) Actual Innocence

Because Fuller cannot show the requisite cause and prejudice for his procedurally defaulted claims, he can only succeed on those claims if he can show that failure to consider the claims will result in a fundamental miscarriage of justice.[20] To establish a "miscarriage of justice", Fuller must demonstrate actual innocence.[21] Fuller is entitled to relief only if he can show that "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."[22] Further, in the context of a death penalty sentence, Fuller is only entitled to relief if he can demonstrate by clear and convincing evidence that, but for the error complained of, no reasonable juror would have sentenced him to death.[23]

---

[20] *See Coleman*, 501 U.S. at 750.

[21] *Id.* at 748, citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[22] *Schlup v. Delo*, 513 U.S. 298 (1995).

[23] *See Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

19

Fuller argues that he is actually innocent and would not have been sentenced to death had the jurors known that he was not the triggerman. Fuller's argument hinges on a newly obtained statement made by Elaine Hays, a co-defendant, in which she asserts that, after co-defendant Wideman and Fuller returned to the car following the shooting, Wideman said that it felt good to shoot somebody. Fuller's claims that this statement proves his actual innocence. His argument fails for two reasons.

First, under Texas law, the jurors could have convicted Fuller of capital murder under the law of parties based upon his participation in the criminal activity. Therefore, even if the jury believed the statement of Hays - a statement given a co-defendant serving prison time and based on the hearsay testimony of another convicted co-defendant - they could have still convicted Fuller of capital murder, making him eligible for the death penalty. Second, as the district court pointed out, "Fuller has produced no evidence whatsoever, much less clear and convincing evidence, that reasonable jurors in Texas never sentence non-triggerman to death..." Therefore, even if the jury believed that Fuller was not the triggerman, they could have still sentenced him to death as guilty of capital murder. Consequently, Fuller's evidence of innocence is not sufficient to result in a miscarriage of justice for failing to consider the merits of his procedurally defaulted claims.

**CONCLUSION**

For the foregoing reasons, Fuller has not demonstrated that he is entitled to relief on any of the claims for which the district court and this Court granted Certificate of Appealability. Accordingly, the district court's denial of Fuller's petition for habeas corpus relief is AFFIRMED. **AFFIRMED.**