Charles L. LAMBERT II, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. A. No. 94–0924–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 10, 1995.

Charles L. Lambert, II, Fort Dix (West), NJ, pro se.

Raymond B. Fitzgerald, Jr., U.S. Attorney's Office, Roanoke, VA, for respondent.

## *MEMORANDUM OPINION*

TURK, District Judge.

This matter is before the court on respondent's motion seeking dismissal of Petitioner's request for habeas review pursuant to 28 U.S.C. § 2255. Petitioner asserts that his sentence was improperly calculated under the United States Sentencing Commission ("U.S.S.C.") Guidelines ("the Guidelines"). Petitioner alleges that the court wrongly sentenced him using the Guidelines classification of "D–Methamphetamine," in absence of proof that D-methamphetamine actually was the form which he distributed. Petitioner asserts that the court therefore should resentence him according to the Guidelines classification of "L-methamphetamine," which receives the lowest punishment under the Guidelines of any form of methamphetamine. Upon careful consideration of the record, the applicable law, and the briefs submitted by the parties, the court finds that it must grant respondent's motion and dismiss the petition.

### I.

On December 16, 1991, petitioner Charles L. Lambert II ("Lambert") pleaded guilty in

federal district .court to four counts of methamphetamine distribution [1] and to one count of a firearm violation.[2] The court fully explained to Lambert the critical elements of the statutory offense with which he was charged, the consequences of a guilty plea, and the rights waived by such a plea. The court found sufficient factual basis to accept Lambert's plea of guilty and found that Lambert's decision was informed, intelligent, and voluntary. On March 25, 1992, the court sentenced Lambert to a total of 123 months in prison, consisting of 63 months for the methamphetamine distribution and the mandatory consecutive 60 months for the firearm conviction, along with four years of supervised release.

At the sentencing hearing and prior to the imposition of sentence, Lambert's counsel urged the court to depart downward from the presentence report ("PSR") recommendations as to the calculation of Lambert's sentence, specifically refuting the PSR's Criminal History Level classification of Lambert and the PSR's recommended upward adjustment for Lambert's role in the offense. Lambert's counsel further stated that Lambert had signed the plea agreement in expectation of receiving a total sentence of approximately ten years. Although the prosecutor opposed a downward deviation from the PSR, the court adopted the reductions put forth by Lambert's counsel in interpreting the Guidelines. The court thus classified Lambert as having a Criminal History Level of III and made no adjustment for Lambert's role in the offense.

The court classified Lambert's offense according to the Guidelines § 2D1.1(c) Drug Quantity Table ("DQT") for "[a]t least 100 G but less than 400 G of Methamphetamine" based on Lambert's admission that he distributed 269.7 grams of methamphetamine and upon the recommendation of the PSR. The PSR was based on a chemical test which identified the substance as methamphetamine, although the test did not indicate whether it included analysis for multiple forms of methamphetamine. The DQT sets the Base Offense Level for the category recommended by the PSR at 26, and the court imposed a 63 month sentence for the methamphetamine counts, the minimum within the Guideline range. Neither party objected to any other findings in the PSR, the defense stating that it had no further objections. Specifically, neither party objected to the court's classification of the substance as the PSR's recommended Guidelines classification "Methamphetamine."

Immediately before imposing sentence, the court asked Lambert if he had anything else to offer in mitigation of punishment. Lambert first stated "I ain't going to say nothing." Then, after speaking with his attorney, he expressed a general dissatisfaction with his plea of guilty, and announced his desire to be represented by an unidentified attorney from Charlotte, North Carolina. Lambert's counsel at the hearing moved to continue the sentencing until another attorney could be appointed, review the case, and advise Lambert. Neither Lambert nor his counsel offered evidence in support of the motion. The court overruled the motion and found that it was appropriate to impose sentence at that time.

Lambert, now an inmate at the Federal Correctional Institution in Fort Dix, New Jersey, filed this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Lambert asserts that his sentence should be recalculated at a lower level in accordance with the "Levo-methamphetamine/l-methamphetamine/l-desoxyephedrine" classification contained in the Drug Equivalency Table ("DET"), in the appendix to the Guidelines DQT. Lambert specifically alleges violations of his 5th, 6th, and 14th Amendment rights by 1) use of a coerced confession, 2) unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant, 3) imposition of a sentence improperly calculated under the provision of the U.S.S.C. description of Dextro-methamphetamine in absence of proof of that description, and 4) denial of effective assistance of counsel. Lambert also prays that the court will grant him the three point reduction in offense level allowed for

---

1. 21 U.S.C. § 841(b)(1)(C).

2. 18 U.S.C. § 924(c).

acceptance of responsibility under the current Guidelines in place of the two point reduction allowed at the time of his sentencing. The United States has filed a response requesting dismissal of the motion, and Lambert has responded. Thus, the motion is now ripe for this court's consideration.

## II.

■ First, Lambert alleges that his confession was coerced in that he was induced to plead guilty by the offer of a plea agreement. The court disagrees. Lambert · merely checked the box which alleges a coerced confession on the § 2255 petition form available to prisoners. Lambert never made a confession, and is actually challenging the practice of plea bargaining. Lambert alleges simply that he pleaded guilty because the prosecution offered terms in a plea agreement which he was willing to accept. Such a claim is without merit. The practice of plea bargaining was approved by the Supreme Court in *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), and in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Lambert admitted at the arraignment that the evidence is "stacked up pretty well against me." Arraignment Tr., p. 22. The court fully informed Lambert of his rights and, based on Lambert's responses to the court's questions, found that Lambert's plea was voluntary.

■ Second, Lambert asserts that the failure of the prosecutor to point out to Lambert the listing for "Levo-methamphetamine/L-methamphetamine/L-Desoxyephedrine" in the DET, in the appendix to the DQT, was unconstitutional failure of the prosecution to disclose evidence favorable to the defendant. The court is unimpressed. A listing in the Guidelines commentary for a particular substance does not constitute evidence. Also, the particular listing to which Lambert refers is not necessarily favorable or relevant to him. Finally, the prosecution in no way prevented Lambert and his counsel from access to the appendix of the U.S.S.C. Guidelines. The Guidelines are publicly available and are reprinted in many sources of legal information. While the prosecution owes a duty to disclose evidence favorable to the defendant, the prosecution is not required to either serve as defendant's counsel or to develop unique defense theories with no evidentiary basis. This claim is meritless.

■ Third, Lambert ˙asserts that his sentence was improperly calculated using the Guidelines classification of "D–Methamphetamine," in absence of proof that D-methamphetamine actually was the form which he distributed, and that he must therefore be resentenced under the classification˙ "L–Methamphetamine." The court disagrees with this assertion. By failing to raise even a˙ general objection on the subject at his sentencing, Lambert waived any objection to the drug classification applied by the court upon the recommendation of the PSR. *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir.1994) (failure to raise methamphetamine objection at sentencing constitutes waiver), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995), and *United States v. Adkins*, 937 F.2d 947 (4th Cir.1991). Moreover, the Circuits are split as to the proper interpretation of the various Guidelines methamphetamine classifications, and as to the significance, for sentencing and appeal purposes, of an absence of chemical test results stating the exact form of methamphetamine in a given case. This court has not conducted an in-depth investigation of the subject, nor has the Fourth Circuit Court of Appeals addressed the issue. Therefore, it was not clear error for the court to sentence Lambert according to the classification "Methamphetamine."

Furthermore, Lambert incorrectly alleges that he was sentenced according to 'D–Methamphetamine." The court actually classified the substance Lambert distributed simply as "Methamphetamine," upon the recommendation of the PSR. Lambert claims to deserve a recalculation of his sentence at the classification "L–Methamphetamine" solely because the court did not explain the evidentiary basis for the classification it used at his sentencing. Although the specific subject of form of methamphetamine was not debated at the sentencing hearing and thus the evidentiary basis for the classification of methamphetamine used to calculate Lambert's sentence may not have been explicitly stated,

the classification was clearly stated in the PSR. The court must presume each factual finding of a PSR to be accurate unless the defendant provides some evidence to show that a genuine controversy exists. Federal Rules of Criminal Procedure 32(c)(3)(D). Lambert has offered no evidence to indicate that either the PSR or the court was incorrect in using the "Methamphetamine" classification. Indeed, Lambert has not even asserted that the substance he distributed actually was "L–Methamphetamine," or that it was not in fact "Methamphetamine" under the Guidelines. Lambert has not met his burden of showing that a genuine controversy exists. The court finds this claim to be meritless.

■■■ Fourth, Lambert argues that he received ineffective assistance of counsel because his attorney failed to object to the calculation of Lambert's sentence under the Guidelines classification "Methamphetamine." To prove that Petitioner did not receive the adequate assistance of counsel, Petitioner must in most cases satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[3] First, Petitioner must show that counsel's representation "fell below an objective standard of reasonableness." There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.,* at 689, 104 S.Ct. at 2065. Second, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* If it is clear that no prejudice resulted from the alleged error, it is not necessary to inquire whether such error constituted inadequate representation. *Id.* In determining whether Petitioner was prejudiced by particular errors, the court must consider the totality of the evidence before the fact finder. *Id.*

Lambert's claim that his attorney failed to represent him effectively at the sentencing hearing is unconvincing. During the hearing, Lambert's counsel persuaded the court to depart from the PSR recommendations both as to Lambert's criminal history category and as to an adjustment for Lambert's role in the offense. Sentencing Tr., pp. 5–13. Moreover, the court stated at the end of the sentencing hearing, "I don't believe there's any attorney in the world who could do you any better job than [your counsel] has done you here." Sentencing Tr., p. 14.

■ Counsel is entitled to rely on the client's facts in developing strategy and arguing a case. Lambert has never alleged facts relevant to his case to support the L–Methamphetamine claim he now raises. The court is therefore quite reluctant to find incompetence in counsel's failure to object on these grounds. Lambert alleges that effective assistance of counsel would have included knowledge of the possible objection, allowed in some Circuits. Because the Circuits are split as to the significance of the issues on which Lambert bases his petition, however, the court now examines and decides the contested issue of the proper interpretation of the Guidelines methamphetamine classifications. A logical analysis of the Guidelines classifications reveals their correct meaning.

■ The Guidelines list four different forms of methamphetamine for sentencing purposes; "Methamphetamine," "Methamphetamine (actual)," "Ice," and "Levo-methamphetamine/L–Methamphetamine/L–Desoxyephedrine." The specific form of methamphetamine is not relevant to guilt or innocence of the statutory violation, because distribution of any form of methamphetamine is a violation of the statute.[4] The form of methamphetamine is relevant only to the calculation of the appropriate sentence under the Guidelines, because the Guidelines pre-

---

**3.** In *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64, however, the Court explicitly reserved the issue of whether a noncapital sentencing hearing is a stage which calls for as rigorous a level of review as the Court set out with its two-prong test. Thus, a claim of ineffective assistance in a noncapital sentencing may be more difficult to prove than ineffective assistance at

trial. Lambert's claim does not even surpass the two-part test, however. *See also United States v. Burkley,* 511 F.2d 47 (4th Cir.1975) (sentencing is nonetheless a critical stage at which defendant is entitled to effective assistance).

**4.** 21 U.S.C. § 841(b)(1)(C).

scribe different Base Offense Levels for the different classifications.

The Guidelines distinguish between the forms of methamphetamine in classifying substances by using two separate methods of analysis. The initial distinguishing method of analysis is the degree of purity, and the second method of analysis is isomeric type. Lambert explicitly does not contest the issue of purity, but the court must explain the Guidelines' system, including purity, in order to reach the issue Lambert does contest, that of isomeric type.[5]

### Methamphetamine Purity

The Guidelines DQT has separate classifications for "Methamphetamine" and "Methamphetamine (actual)." The only distinction between the two forms is degree of purity. The Guidelines classify most illegal drugs disregarding their degree of purity and instead using the entire weight of a diluted mixture containing them. The drug methamphetamine, however, may be classified either by using the entire weight of the diluted mixture, or by using only the weight of the actual methamphetamine contained within the diluted mixture. Thus, a ten gram mixture of methamphetamine with a purity of ten percent may be classified as either ten grams of "Methamphetamine" or one gram of "Methamphetamine (actual)."

The Base Offense Level for any weight of "Methamphetamine (actual)," however, is ten times that of an equal weight of "Methamphetamine." The Guidelines direct that a methamphetamine mixture should be classified as to whichever classification will result in a greater sentence. Thus, essentially, if a substance is *less* than ten percent pure methamphetamine the substance will be classified, using the entire weight of the substance, as "Methamphetamine," but if the substance is *more* than ten percent pure methamphetamine it will be classified, using only the weight of the actual methamphetamine con-

tained in the mixture, as "Methamphetamine (actual)."

### Isomer Type

The form of methamphetamine is not only distinguished by its degree of purity. The Guidelines also look to the isomer type of the methamphetamine to draw distinctions for sentencing purposes. Methamphetamine is a drug which has only one molecular formula, but which exists in two different molecular structures, or isomers. The isomers of methamphetamine are mirror images of each other. Although they have the same chemical formula, L–Methamphetamine, or Levo–Methamphetamine Hydrochloride, has a molecular structure bending to the left, and D–Methamphetamine, or Dextro–Methamphetamine Hydrochloride, has a molecular structure bending to the right. When an unknown mixture is tested through chemical processes for the presence of methamphetamine, both isomers test positive because they are, in fact, both chemically methamphetamine. The only way to distinguish the two isomers in a laboratory is by passing polarized light through the samples using a spectrometer. The D–Methamphetamine isomer will bend the light to the right, while the L–Methamphetamine isomer will bend the light to the left. D–Methamphetamine, however, is much more psychoactive when ingested, whereas L–Methamphetamine has little physiological effect.

The most common chemical process of methamphetamine production results in a substance containing equal amounts of each isomer. This most common street form of methamphetamine is a 50:50 ratio combination of D and L isomers sometimes referred to as D–L methamphetamine. In an effort to make the substance more potent, some producers use additional chemical processes to increase the particular concentration of the D-methamphetamine isomer, or they may use a completely different production process

**5.** For a more detailed description of the chemical analysis and the isomeric properties of D–Methamphetamine and L–Methamphetamine, see *United States v. Bogusz,* 43 F.3d 82, 88–89 (3d Cir.1994), *cert. denied sub nom. O'Rourke v. U.S.,* —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995), and *United States v. Carroll,* 6 F.3d 735

(11th Cir.1993) *cert. denied sub nom. Jessee v. U.S.,* —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994). These decisions provide a useful exposition, on which these facts are based, although this court disagrees as to the proper interpretation of the Guidelines classifications and standards of proof to be applied.

to produce "Ice," which the Guidelines state contains 80 percent or greater D–Methamphetamine. *United States v. Decker,* 55 F.3d 1509, 1512 (10th Cir.1995).

The classifications in the Guidelines reflect the differences in isomer type. In addition to "Methamphetamine" and "Methamphetamine (actual)," the Guidelines Drug Quantity Table ("DQT") includes the classification "Ice," with the 80 percent D–Methamphetamine requirement. The Guidelines Drug Equivalency Table ("DET") in the appendix to the DQT also adds to the possible methamphetamine classifications that of "L–Methamphetamine/Levo–Methamphetamine/L–Desoxyephedrine," or the L-isomer. As has been discussed, the Guidelines punish these various classifications of methamphetamine differently. Accordingly, Lambert asserts that the isomer of methamphetamine which he distributed was not proved at his sentencing but rather was assumed to be D-methamphetamine, so he should therefore be resentenced according to the DET's classification for "L–Methamphetamine."

The Guidelines DET considers "Methamphetamine (actual)," which is 100% pure methamphetamine, to be equal for punishment purposes with "Ice," which the Guidelines specify as "d-methamphetamine hydrochloride of at least 80% purity." If, as Lambert alleges, "Methamphetamine" and "Methamphetamine (actual)" only consist of D-methamphetamine, then the classifications for "Ice" and "Methamphetamine (actual)" are redundant, and the disparity in the Guidelines equivalent treatment of the two is actually contradictory. It is not unimaginable that the Guidelines might be inconsistent, but the courts must choose a noncontradictory, or the least contradictory, interpretation of the Guidelines whenever possible. Thus, for the two forms to be logically even roughly equivalent, the Guidelines authors must have intended "Methamphetamine (actual)" to mean the common D–L isomeric combination

of methamphetamine. *United States v. Carroll,* 6 F.3d 735 (11th Cir.1993) cert. denied sub nom. *Jessee v. U.S.,* — U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994).

The context of the Guidelines provides strong support for an interpretation that "Methamphetamine" and "Methamphetamine (actual)" mean the D–L isomeric combination of the drug, its most common street form. The Guidelines use the broad term "Methamphetamine" with no limiting language as to isomer type. In contrast, the Guidelines make clear that "Ice" refers specifically and exclusively to the D-isomer, and "L–Methamphetamine" is clearly a reference only to the L-isomer of the drug. Thus, a substance containing both the D- and L-isomers of methamphetamine cannot properly be classified as merely "L–Methamphetamine." *Carroll,* 6 F.3d 735.

As to notice to counsel of a potential defense, Lambert states in his petition that at the time of his sentencing he was unaware of the distinction between the two isomeric forms of methamphetamine. Petition, pp. 6–7. Lambert undoubtedly would have been aware of that distinction if the substance he distributed actually was L–Methamphetamine. Lambert could be expected to notice the significant difference in physiological effect from the use of isolated L–Methamphetamine as compared with the much more common and potent street grade which is classified as "Methamphetamine." Given the extreme rarity of L–Methamphetamine as an isolated substance, as well as its "inert" nature and unmarketability, it is inconceivable that Lambert was using and distributing that isolated type of methamphetamine without being aware of a distinction between the forms of the drug.[6] Assistance of counsel cannot be deemed inadequate for failing to make an objection when the grounds are factually inconceivable.

**6.** *See United States v. Hall,* 62 F.3d 1426, 1995 WL 453254 (9th Cir.1995) (expert witness explaining that "it is not reasonable to expect a clandestine laboratory to produce L-methamphetamine"), *United States v. Allison,* 63 F.3d 350, 354 (5th Cir.1995) (footnote 7, questioning why anyone would set up a laboratory to produce l–methamphetamine), and *United States v. Lande,* 40 F.3d 329, 331 (10th Cir.1994) (affidavits of forensic chemists stating that they had never encountered clandestine lab producing L-methamphetamine) *cert. denied,* — U.S. ——, 115 S.Ct. 1988, 131 L.Ed.2d 875 (1995).

The drugs Lambert distributed had a low purity level, and were thus appropriately classified as "Methamphetamine" instead of "Methamphetamine (actual)." Purity level is a separate issue from isomeric composition. Lambert admits in his brief, "[t]he question is not one of purity but of molecular structure." Petition, p. 10. Also, the record contains no indication that the substance Lambert distributed was "inert" as L–Methamphetamine has been described. *Carroll,* 6 F.3d 735. The circumstantial evidence and the pleading builds a preponderance of the evidence which is uncontradicted, even by Lambert's petition. *United States v. Koonce,* 884 F.2d 349, 352–53 (8th Cir.1989) (circumstantial evidence that the form of methamphetamine was "Methamphetamine" held sufficient). In light of the uncontroverted facts, and counsel's other extensive and successful arguments on Lambert's behalf, counsel's performance cannot be said to have fallen outside the wide range of professional assistance demanded of criminal attorneys.

Because the court finds that counsel's performance did not fall "below an objective standard of reasonableness," the court need not address the prejudice prong of the ineffective assistance of counsel claim. Moreover, the court's findings that the proper application of the Guidelines provides no basis for an L–Methamphetamine objection of the type Lambert suggests and that Lambert was correctly sentenced under the Guidelines removes any potential for prejudice from a failure to raise the issue of isomeric composition of the methamphetamine. Lambert's claim of ineffective assistance of counsel is unconvincing.

Finally, Lambert prays that the court will grant him the three point reduction in offense level allowed for acceptance of responsibility under the current Guidelines, in place of the two point reduction allowed at the time of his sentencing. Lambert correctly admits in his response that "this [change] is not retroactive." Petitioner's Response, p. 4. Accordingly, the court finds no cause to grant an additional reduction in Lambert's sentence.

## III.

For the reasons stated, the court finds that it must grant defendant's motion seeking dismissal of the petition.