**UNITED STATES of America, Respondent–Plaintiff,**

v.

**Allen J. JAMES, Petitioner–Defendant.**

**Civil No. 95–0252–R.**
**Criminal No. 90–1303–R.**

United States District Court, S.D. California.

Aug. 4, 1995.

Order Denying Reconsideration Jan. 23, 1996.

Michael E. Lasater, Assistant United States Attorney, Southern District of California, for Respondent–Plaintiff.

Petitioner–Defendant, Pro se.

## ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

RHOADES, District Judge.

This matter comes before the Court on Petitioner Allen J. James' motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed by this Court. For the reasons given below, Petitioner's motion is DENIED.

### I. *Background*

On December 19, 1990, a federal grand jury returned a one-count indictment charging Petitioner James with possession with intent to distribute approximately one and one-half pounds of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). On June 21, 1991, pursuant to a plea agreement, Petitioner pled guilty to a superseding bill of information charging Petitioner with possession with intent to distribute approximately 437 grams of a mixture containing methamphetamine. On September 23, 1991, this Court sentenced Petitioner to 78 months in custody and four years supervised release.

On February 16, 1993, Petitioner filed a petition for modification of imposed term of imprisonment. The District Court filed an order denying the requested relief on February 19, 1993. Petitioner filed a notice of appeal on March 22, 1993. The Court of Appeals affirmed the District Court's order on January 11, 1994.

On February 27, 1995, Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. On March 2, 1995, this Court ordered the Government to show cause why Petitioner's § 2255 motion should not be granted. The Government filed a response and opposition to Petitioner's motion on April 4, 1995. Petitioner filed a traverse to the Government's response on April 17, 1995.

On April 18, 1995, Petitioner filed a motion for bail pending a decision on the § 2255 motion, and this Court ordered the Government to show cause why Petitioner should not be released on bail. The Government filed a response and opposition to Petitioner's motion for bail on April 23, 1995. Petitioner filed a traverse to the Government's response on May 15, 1995.

On May 22, 1995, this Court ordered further briefing and denied Petitioner's motion for bail. The Government filed further response and opposition to Petitioner's motion on June 2, 1995. Petitioner filed a traverse to the Government's further response on June 21, 1995, and his own supplemental briefing on June 27, 1995.

### II. *Discussion*

■ Petitioner James asks this Court to vacate his sentence on the ground of ineffective assistance of counsel. Petitioner contends that his counsel failed to require the Government to prove that the methamphetamine involved in Petitioner's offense was d-methamphetamine and not l-methamphetamine. Petitioner further contends that his counsel's deficient performance prejudiced the defense because this Court arbitrarily calculated Petitioner's sentence under the United States Sentencing Guidelines based on generic "methamphetamine," which produced a higher base offense level and thus a longer sentence than if the sentence had

been calculated on l-methamphetamine.[1]

Methamphetamine exists in at least two forms, d-methamphetamine and l-methamphetamine.[2] D-methamphetamine and l-methamphetamine are both isomers of methamphetamine, that is, they consist of identical molecules differently arranged. *United States v. Bogusz*, 43 F.3d 82, 88–89 (3d Cir. 1994), *cert. denied sub nom. O'Rourke v. United States*, — U.S. —, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995). The Drug Quantity Table of section 2D1.1 of the Sentencing Guidelines does not differentiate among the types of methamphetamine. The Drug Equivalency Table, however, specifies different marijuana equivalencies for l-methamphetamine and generic methamphetamine.[3] Because l-methamphetamine is "grossly different" from other forms of methamphetamine in that l-methamphetamine "produces little or no physiological effect when ingested," the Sentencing Guidelines treat l-methamphetamine far less severely.[4] *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995), quoting *Bogusz*, 43 F.3d at 89.

■ The term "methamphetamine" is often used generically in indictments, plea bargains, and in the presentation of evidence at trial. Evidence regarding generic "methamphetamine" at *trial* will not affect conviction because the Government only needs to establish the involvement of methamphetamine—not the type of methamphetamine—to prove guilt under the relevant narcotics statutes. *United States v. Deninno*, 29 F.3d 572, 579–80 (10th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995).

At *sentencing*, however, the distinction between d-methamphetamine and l-methamphetamine becomes relevant because of a dramatic difference in sentencing ranges under the Sentencing Guidelines. Without specific evidence at trial or detailed provisions in a plea agreement, use of the word "methamphetamine" may leave open the question of whether the drug involved was d-methamphetamine or l-methamphetamine.

■ The Government generally bears the burden at sentencing to prove by a preponderance of the evidence the type of methamphetamine involved in a drug offense. *United States v. Bogusz*, 43 F.3d 82, 91 (3d Cir.1994); *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir.1994); *United States v. Patrick*, 983 F.2d 206, 208 (11th Cir.), *reh'g denied*, 986 F.2d 505 (1993). However, the Government is only required to shoulder its burden of proof if the defendant raises the issue of methamphetamine type at trial or at the sentencing hearing. *United States v.*

---

1. Petitioner explains that the sentencing error complaint goes to show the prejudice suffered as a result of ineffective assistance of counsel and is not a separate claim. Pet.'s Supp. Br. at 2. Petitioner did not raise the sentencing error issue on direct appeal and therefore is foreclosed from asserting it via collateral attack under a § 2255 petition, *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir.1994) ("We therefore conclude that this court follows the rule that nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C. § 2255.").

2. Methamphetamine may also come in the form of a mixture of d- and l-methamphetamine called d,l-methamphetamine. *United States v. Lande*, 40 F.3d 329, 330 (10th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1988, 131 L.Ed.2d 875 (1995).

3. Sentencing courts use the Drug Quantity Table in § 2D1.1 of the Sentencing Guidelines to calculate the base offense level for offenses involving controlled substances. "Methamphetamine" is one of the drugs listed in the Drug Quantity Table.

When an offense involves a drug which is not listed in the Drug Quantity Table, sentencing courts use the Drug Equivalency Table to convert the drug into an equivalent amount of marijuana. The base offense level for the marijuana equivalent then is determined using the Drug Quantity Table.

"L-methamphetamine" is not listed in the Drug Quantity Table but is included in the Drug Equivalency Table. In order to calculate a base offense level for an offense involving l-methamphetamine, the l-methamphetamine must be converted to a marijuana equivalent. *United States v. Bogusz*, 43 F.3d 82, 91 (3d Cir.1994).

4. One gram of l-methamphetamine is equivalent to 40 grams of marijuana while one gram of generic methamphetamine is equivalent to one kilogram of marijuana and one gram of generic methamphetamine (actual) is equivalent to 10 kilograms of marijuana. *See* U.S.S.G. § 2D1.1 comment. (n. 10) (Drug Equivalency Table). The lighter treatment is tied to the fact that l-methamphetamine has little or no stimulating effect.

*Acklen,* 47 F.3d 739, 742 n. 4 (5th Cir.1995) ("The government bears the burden of proving that the substance involved was [d-] methamphetamine only after the defense has raised the issue at sentencing."); *United States v. Koonce,* 884 F.2d 349, 353 (8th Cir.1989) (government has no obligation to prove that methamphetamine is d-methamphetamine, its commonly understood type, until the defense raises the possibility that "methamphetamine" means l-methamphetamine).[5]

Petitioner points out that the Government failed to prove at sentencing whether Petitioner possessed l-methamphetamine or d-methamphetamine. Since Petitioner never raised the issue of methamphetamine type during the guilty plea hearing or at sentencing, however, the Government never had to carry the burden of proof as to methamphetamine type.

Petitioner argues that he was denied effective assistance of counsel precisely because his attorney did not require the Government to carry its burden of proof regarding the type of methamphetamine involved in Petitioner's offense. Petitioner argues that prejudice to the defense resulted from counsel's failure when this Court arbitrarily determined Petitioner's sentence under the Sentencing Guidelines' base offense level for the more harshly punished generic methamphetamine rather than l-methamphetamine.

■ A petitioner who claims ineffective assistance of counsel has a heavy burden. Counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). *See also United States v. Hamilton,* 792 F.2d 837, 839 (9th Cir.1986) (review of counsel's performance is highly deferential and courts indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance).

■ Generally, to prevail on a claim of ineffective assistance of counsel, Petitioner must show that: (1) his attorney's performance was unreasonable under prevailing professional standards, and (2) that there is "a reasonable probability that but for counsel's unprofessional errors, the result would have been different." *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir.1994) (citing *Strickland,* 466 U.S. at 687–91, 694, 104 S.Ct. at 2064–67, 2068).

■ First, Petitioner has not shown that counsel's failure to require the Government to prove that the methamphetamine involved was d-methamphetamine was unreasonable under prevailing professional standards. The Drug Quantity Table in § 2D1.1 of the Sentencing Guidelines specifies base offense levels for offenses involving "methamphetamine." Petitioner pleaded guilty to possession of a mixture containing "methamphetamine" with intent to distribute. No party to the case so much as mentioned "*l*-methamphetamine." The Government, the defense, and this Court all reasonably concluded that the Sentencing Guidelines' base offense levels for methamphetamine should be used to calculate Petitioner's sentence.

■ As Petitioner accurately points out, defense counsel did not insist that the Government prove that the methamphetamine involved in Petitioner's offense was d-methamphetamine rather than l-methamphetamine. Experience in literally hundreds of cases involving methamphetamine, however, compels this Court to point out that *no* defense counsel in any of those cases ever attempted to require the Government to prove type of methamphetamine either at trial or at sentencing. Subsequent to Petitioner's sentencing, case law has illuminated the Sentencing Guidelines' differentiation between l-methamphetamine and other types of methamphetamine. Nevertheless, "[w]e do not look at counsel's performance through the distorting lenses of hindsight, but rather examine counsel's performance according to what was reasonable at the time." *Deutsch-*

---

5. "Although the government has the burden in a criminal case of proving every element of the offense charged, it has no burden of proving that a term used in its commonly understood sense has no other possible meaning—at least until the possibility of another meaning is raised by the defense." *Koonce,* 884 F.2d at 353 (quoting *U.S. v. Francesco,* 725 F.2d 817, 821 (1st Cir.1984)).

er v. Whitley, 884 F.2d 1152, 1159 (9th Cir. 1989), vacated on other grounds, 506 U.S. 935, 113 S.Ct. 367, 121 L.Ed.2d 279 (1992). This Court finds that counsel's performance was reasonable under prevailing professional standards.

■ Second, Petitioner has not established a "reasonable probability" that the result of his sentencing would have been different had counsel required the Government to prove the type of methamphetamine involved in Petitioner's offense. Petitioner would only be able to show that he would have received a lesser sentence by proving that the substance involved in his offense was indeed l-methamphetamine.

Petitioner submitted an affidavit to this Court enumerating for the first time the reasons for his belief that the drug involved in the offense was l-methamphetamine. Petitioner states, "I used [the drugs] and they proved not to be very good. It took more of them to achieve my normal 'high.'" Petitioner may have attempted to prove too much. As discussed above, l-methamphetamine is differentiated from d-methamphetamine in the Sentencing Guidelines because l-methamphetamine has "little or no physiological effect." Bogusz, 43 F.3d at 89. That Petitioner was able to achieve his "normal high," albeit by ingesting a greater amount of methamphetamine than usual, tends to show that Petitioner did not in fact possess l-methamphetamine.

Petitioner also states in his affidavit that his supplier said the drugs were being produced in Mexico by recycling "Vicks" inhalers. Petitioner asserts that he saw Vicks inhalers in the trunk of his supplier's car and that the supplier asked Petitioner for assistance in obtaining more inhalers. Finally, Petitioner states his belief that Vicks inhalers do not contain d-methamphetamine.

The Government submitted an affidavit by Forensic Chemist Joanne M. Katz of the Drug Enforcement Agency, which addressed the subject of Vicks inhalers, inter alia:

I have never encountered nor do I know of any incidence of the clandestine manufacture of l-methamphetamine ... nor have I encountered a laboratory that involved the extraction of l-methamphetamine from Vicks inhalers. Examination of all methamphetamine exhibits analyzed in the last ten years at the DEA Southwest Laboratory shows d-methamphetamine or d,l-methamphetamine only. No exhibits of methamphetamine were determined to be in the form of l-methamphetamine. While it is possible to manufacture l-methamphetamine, it is not probable.

Government's Resp. and Opp'n Ex. 4 Katz Aff.

Petitioner correctly observes that Katz's affidavit would be insufficient at sentencing to carry the Government's burden of proving that Petitioner possessed d-methamphetamine. That ship has sailed, however. The burden of proof is now on the Petitioner to show a reasonable probability that the result of his sentencing would have been different because he possessed l-methamphetamine. After careful consideration of the assertions and credibility of each affidavit, this Court finds that Petitioner has not established a reasonable probability that the substance involved in his offense was l-methamphetamine rather than d-methamphetamine. Consequently, Petitioner has not shown a reasonable probability that but for counsel's failure to require the Government to prove methamphetamine type, the result of Petitioner's sentencing would have been different.

### III. Conclusion

Petitioner James has not satisfied the heavy burden of showing ineffective assistance of counsel. Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.

### ORDER DENYING MOTION FOR RECONSIDERATION

This matter is before the Court on Petitioner Allen J. James' motion for reconsideration. Petitioner moves for reconsideration on the basis of newly discovered information from the DEA and Petitioner's newly discovered double jeopardy claim. For the reasons stated below, Petitioner's motion for reconsideration is denied.

## I. Motion For Reconsideration

▮▮ The Ninth Circuit recently articulated the appropriate standard for reconsideration under Fed.R.Civ.P. 59(e) and 60(b): absent "highly unusual circumstances," reconsideration is appropriate only where the court is presented with newly discovered evidence; the court committed "clear error or the initial decision was manifestly unjust;" or there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993); *see also* William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial* ¶ 12:160 (1994) (citing *School Dist. No. 1J* ).

On August 4, 1995, this Court denied Petitioner's motion for habeas corpus relief pursuant to 28 U.S.C. § 2255. On September 15, 1995, this Court permitted Petitioner to file a motion for reconsideration. In support of his motion, Petitioner first argues that this Court made clear error. Petitioner then offers "newly discovered information" and a "newly recognized double jeopardy claim."

### A. Clear Error: Ineffective Assistance Of Counsel

Petitioner's § 2255 motion alleged ineffective assistance of counsel because his trial attorney did not require the Government to prove that the methamphetamine involved in Petitioner's offense was d-methamphetamine rather than l-methamphetamine. This Court stated that to prevail on a claim of ineffective assistance of counsel, Petitioner must show that: (1) his attorney's performance was unreasonable under prevailing professional standards, and (2) that there is a "reasonable probability that but for counsel's unprofessional errors, the result would have been different." *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir.1994) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–91, 694, 104 S.Ct. 2052, 2064–67, 2068, 80 L.Ed.2d 674 (1984)).

In concluding that Petitioner's counsel's performance was reasonable under prevailing professional standards, by way of example this Court recognized that to its knowledge no defense counsel has ever raised the issue as to the type of methamphetamine. That recognition, however, was not the sole basis for the Court's conclusion. On reconsideration, Petitioner misconstrues this Court's Order and states that the Court admitted that Petitioner's trial counsel was "negligent" and "incompeten[t]." *See* Petitioner's Mot. at 1. Petitioner further argues that this Court excused his trial counsel's negligence because all other defense attorneys are equally incompetent. This Court made no such finding.

Counsel's decision not to require the Government to prove the type of methamphetamine did not fall below the prevailing standards. As the court recently recognized in *Lambert v. United States,* 908 F.Supp. 356 (W.D.Va.1995):

> Counsel is entitled to rely on client's facts in developing strategy and arguing a case. Lambert has never alleged facts relevant to his case to support the L–Methamphetamine claim he now raises. The court is therefore quite reluctant to find incompetence in counsel's failure to object on these grounds.

*Id.* at 360. This Court agrees.

▮▮ In the present case, Petitioner does not contend that he provided his trial counsel with any reason to suspect that the extremely rare l-methamphetamine was involved. For reasons known only to Petitioner, after he received the benefit of the plea bargain and after the drugs have been destroyed, he alleges for the first time in connection with his § 2255 motion that his source of drugs stated that the methamphetamine was being produced from Vicks Inhalers (a source of l-methamphetamine) and that he saw Vicks Inhalers in the source's car. Failure to make an objection for which there is no factual basis does not amount to ineffective assistance of counsel. *See Lambert,* 908 F.Supp. at 362 ("Assistance of counsel cannot be deemed inadequate for failing to make an objection when the grounds are factually inconceivable.").

Petitioner draws comfort in the Fifth Circuit's decision in *United States v. Acklen,* 47 F.3d 739 (5th Cir.1995). *Acklen,* however, is likewise inapplicable. In *Acklen,* the district court denied a § 2255 petitioner and held

that trial counsel's failure to object to the type of methamphetamine was not ineffective assistance of counsel. *Id.* at 743. The Fifth Circuit reversed and stated that "[m]erely reading the commentary to [§ 2D1.1] would have alerted counsel to the potentially significant impact on sentencing that the type of isomers involved can have." *Id.* The court did not hold that counsel's performance was unreasonable, it merely held that it could not say that the record demonstrated as a matter of law that counsel acted reasonably. *Id.*[1]

In the present case, the Court can say as a matter of law that Petitioner's trial counsel's performance did not fall below an objective standard of reasonableness under the prevailing standards. This standard is analogous, if not identical, to the standard for civil malpractice;[2] an attorney "impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Lucas v. Hamm,* 56 Cal.2d 583, 591, 15 Cal. Rptr. 821, 364 P.2d 685 (1961). Discussing the rule against perpetuities and restraints on alienation—two subjects which at times are equally as confusing as the Sentencing Guidelines—the California Supreme Court stated:

> These closely akin subjects have long perplexed the courts and the bar. Professor Gray, a leading authority in the field stated: "There is something in the subject which seems to facilitate error. Perhaps it is because the mode of reasoning is unlike that with which lawyers are most familiar.... A long list might be formed of the demonstrable blunders with regard to its questions made by eminent men, blunders which they themselves have been sometimes the first to acknowledge; and there are few lawyers of any practice in drawing wills and settlements who have not at some time either fallen into the net which the Rule spreads for the unwary, or at least shuddered to think how narrowly they have escaped it." Gray, *The Rule Against Perpetuities,* (4th Ed.1942) p. xi.

56 Cal.2d at 592, 15 Cal.Rptr. 821, 364 P.2d 685. The court concluded that an attorney, who allegedly drafted a will which violated the rule against perpetuities and restraints on alienation, did not fail to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity to commonly exercise.

Without finding that any error in this case was made, it must be observed that there is something in the Sentencing Guidelines which seems to facilitate error. The Guidelines present a morass which is at times as esoteric as the rule against perpetuities. This Court does not find it proper to hold that an attorney has provided constitutionally ineffective assistance for not making an objection at sentencing for which there is no factual basis and which is based on a highly unlikely premise. Although Petitioner bears the burden of proof, he has not established that a reasonably competent attorney—using such skill, prudence, and diligence as lawyers of ordinary skill—would require the Government to prove that drugs are anything other than plain "methamphetamine" when the Government assumes, Probation assumes, the judge assumes, and the defendant confesses that he possessed "methamphetamine." It is quite easy to spin the telescope around and suggest what counsel could have done.[3] However, the court does "not look at

---

1. To the extent that *Acklen* suggests that an attorney's failure to raise the issue of l-methamphetamine or to investigate the issue—without any reason to suspect l-methamphetamine—is per se ineffective assistance of counsel, this Court disagrees.

2. *See McCord v. Bailey,* 636 F.2d 606, 609 (D.C.Cir.1980) ("[T]he legal standards for ineffective assistance of counsel in McCord's criminal proceedings and for legal malpractice in this action are equivalent."); *United States v. Brant,* Civ. Nos. 91–5859, 91–6673, 1993 WL 313369, *10 (July 30, 1993) ("Habeas corpus petitioner grounded on ineffective assistance of counsel are essentially Constitutional legal malpractice claims.").

3. As stated in this Court's August 4, 1995 Order, the Guidelines require a sentencing court to use the Drug Equivalency Table in the commentary to § 2D1.1 to convert a non listed drug into an equivalent amount of a listed drug. The Drug Equivalency Table lists some 74 different drugs and chemicals. Of those listed chemicals Petitioner pleaded guilty to possessing one: **Methamphetamine.** It is easy now to say 'Petitioner's trial counsel could have "merely" looked about half-way down on page 2.50 of the 1990 Sentencing Guidelines, to see that L-Methamphet-

counsel's performance through the distorting lenses of hindsight, but rather examine counsel's performance according to what was reasonable at the time." *Deutscher v. Whitley,* 884 F.2d 1152, 1159 (9th Cir.1989), vacated

on other grounds, 506 U.S. 935, 113 S.Ct. 367, 121 L.Ed.2d 279 (1992).

In view of the complexity of the Sentencing Guidelines,[4] and in accordance with this Court's prior ruling, Petitioner has not over-

amine/Levo-methamphetamine/L–Desoxyephedrine provides for a lesser sentence and he could have asked his client if it was possible that he did not possess methamphetamine, or Petitioner's counsel could have merely looked further down in the list and asked his client if he possessed Methylenedioxy**amphetamine**/MDA or Methlenedioxy**methamphetamine**/MDMA or Methylenedioxy–N–ethyl**amphetamine**/MDEA which all provide a lesser sentence, or his counsel could have merely noticed that acetaminophen is not a controlled substance and asked his client if he possessed acetaminophen, ....' On first blush, an average attorney without a PHD in organic chemistry would not have made these fine distinctions between the listed chemicals without a factual basis to do so. However, when considering whether counsel's conduct was constitutionally ineffective, this Court does not engage in such inquiries. Petitioner confessed to possessing **Methamphetamine** and was sentenced accordingly.

4. This Court's previous reflection of the Sentencing Guidelines bears repeating here, *see United States v. Kuhl,* 816 F.Supp. 623, 626–27 n. 4 (S.D.Cal.1993). The often confusing amendments to the guidelines have created the situation at issue here. Judge Kozinski's concerns expressed in another setting are equally applicable in the realm of the guidelines: "By continually shifting the target at which we ask [judges] to aim, we no doubt make it harder for them to hit it." *Fair v. Bowen,* 885 F.2d 597, 602 n. 3 (9th Cir.1989).

In his book *The Price of Perfect Justice,* Judge Macklin Fleming made the following observations:

The fuel that powers the modern theoretical legal engine is the ideal of perfectibility—the concept that with the expenditure of sufficient time, patience, energy, and money it is possible eventually to achieve perfect justice in all legal process.... Yet a look at almost any specific area of the judicial process will disclose that the noble ideal has consistently spawned results that can only be described as pandemoniac.... Why, we ask ourselves, have such diligent attempts to create a perfect legal order fared so poorly in practice? ... The answer, perhaps, may be found in the reason given by Macaulay for the failure of ambitious governments: the government that attempts more than it ought ends up doing less than it should.

Macklin Fleming, *The Price of Perfect Justice* 3 (1974), citing Thomas Babington Macaulay, *Critical and Historical Essays* 335 (1890).

After sentencing several hundred defendants under the sentencing guidelines and after dili-

gent, repeated, and thoughtful study of the Manual, I am afraid that the government, in the hope that disparity would be eliminated, has attempted more than it ought and has ended up doing less than it should.

Since the adoption of the sentencing guidelines, considerable thought, effort, scholarly comment, and judicial interpretation have been directed toward making the guidelines more workable, understandable, and harmonious with congressional intent. The fruits of this great effort include the unfortunate result in the instant case.

Anyone who believes that the guidelines are any more comprehensible than the Internal Revenue Code should review, as an example, the recent amendment to Guidelines § 1B1.3 regarding relevant conduct. After reviewing page after page of amendments, examples, and references to other sections, one will be left with the distinct impression that confusion reigns and further amendments are on the way. One would conclude that the best efforts of the experts in the field would be insufficient to bring order out of chaos.

After toiling to comprehend the guideline morass, one might ask, "What should be done?" Many thoughtful observers have reached the same conclusion that conductor George Szell did, when asked what might be done to fix the troublesome acoustics at Avery Fisher Hall. Mr. Szell offered a specific remedy: "Tear it down and start all over." Hubert Saal, "Brave New Hall," *Newsweek,* Nov. 1, 1979 at 59.

Although guidelines cognoscenti recognize that any chance of the guidelines being abolished is nil, continued tinkering, amending, and adjusting will not make the guidelines understandable or workable, nor will the envisioned goals be any more achievable.

As pointed out by the Greek philosopher Zeno, "Before a body in motion can reach a given point, it must first traverse the half of the distance; before it can traverse the half, it must traverse the quarter; and so on, *ad infinitum*.... Consequently, the goal can never be reached." *See* Zeller, *Die Philosophie d. Griechen* 54 (1876).

And so it is in trying to find perfection in the guidelines. It cannot be done. In the meantime, confusion governs what the trial judges do, time is wasted, and, above all, justice has been replaced with the slide rule—an unfortunate state of affairs.

Just as painting by the numbers is not art, sentencing by the numbers is not justice. Lamentably, this case is paradigmatic of what the guidelines have done and are doing to the criminal justice system.

come the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *United States v. Hamilton*, 792 F.2d 837, 839 (9th Cir.1986).

Even if his trial counsel's conduct fell below an objective standard of reasonableness, this Court finds that Petitioner cannot satisfy his burden to establish he was prejudiced; *i.e.*, Petitioner has not established a "reasonable probability" that the result of his sentencing would have been different had his trial counsel required the Government to prove the type of methamphetamine involved in Petitioner's offense. In addition to Petitioner's failure to bring the issue to his trial counsel's attention, the facts of his arrest undermine Petitioner's contention that he possessed l-methamphetamine rather than d-methamphetamine. D-methamphetamine produces the high desired by drug users whereas l-methamphetamine produces "little or no physiological effect when ingested." *United States v. Bogusz*, 43 F.3d 82, 89 (3d Cir.1994). The Presentence Report indicates that at the time of his arrest, the police officers observed that Petitioner "appeared hyperactive" and his "pupils were dilated and would not constrict." Presentence Report at 2:36–39.[5] Further, as noted in this Court's prior order, Petitioner declares that he was able to achieve his "normal high," by using the substance he now claims was l-methamphetamine. This Court concludes that the facts surrounding Petitioner's arrest coupled with his own admissions, tends to show that Petitioner did not in fact possess l-methamphetamine but rather possessed d-methamphetamine, the drug for which he was sentenced.

Petitioner argues that the high standard for proving ineffective assistance of counsel unconstitutionally shifts the burden of proof

to the petitioner. In his "supplemental motion," [6] Petitioner argues that the Ninth Circuit's recent decision in *United States v. Dudden*, 65 F.3d 1461 (9th Cir.1995), requires a finding that it was plain error for the Government to not determine the type of methamphetamine involved. Petitioner is mistaken. The court in *Dudden* stated, as this Court stated in its prior order, that the Government bears the burden of proof *at sentencing* to prove by a preponderance of the evidence the type of methamphetamine involved in a drug offense. *Id.* at 1470. In *Dudden*, the defendant argued *at sentencing* that the drugs involved were l-methamphetamine. *Id.* at 1469–70. The defendant there appealed from the district court's finding that the drugs involved were d-methamphetamine. Thus, *Dudden* involves an appeal from sentencing where the burden of proof was on the Government. By contrast, the present case involves an allegation of ineffective assistance of counsel for which the burden of proof is on Petitioner. Thus, *Dudden* does not apply to the instant motion for habeas corpus relief. This Court finds that Petitioner's self-serving declaration, submitted after the drugs have been destroyed, does not carry Petitioner's burden of proof.[7]

### B. Newly Discovered Information

Petitioner also presents this Court with "newly discovered information." Specifically, Petitioner provides various documents from the Drug Enforcement Administration demonstrating that it is possible to produce l-methamphetamine from Vicks Inhalers. Petitioner's newly discovered documents do not establish that he in fact possessed l-methamphetamine. Thus, Petitioner has not established a "reasonable probability" that the result of his sentencing would have been

5. At his sentencing hearing, Petitioner stated that he had an opportunity to go over the presentence report with his attorney and had no objections. Transcript of Sentencing at 3:6–12 (Sept. 23, 1991).

6. Petitioner submitted an untimely "Supplemental Motion for Reconsideration." Although this brief was untimely, to make the record complete, the Court has considered it.

7. Petitioner further directs this Court's attention to an unpublished decision, *Dong Soo Kim v. United States*, Cv. No. 95–1411 RMT, Cr. No. 90–975 RMT (N.D.Cal. Oct. 17, 1995). *Dong Soo Kim* grants a § 2255 motion "on the ground of sentencing error," it does not address the claim presented here, *i.e.*, ineffective assistance of counsel for failure to object to the type of methamphetamine. The opinion does not provide an explanation of the facts or the law to support Petitioner's motion in the instant case.

different had his counsel required the Government to prove the type of methamphetamine involved in Petitioner's offense.[8]

## C.  Double Jeopardy

Finally, Petitioner asserts a "newly recognized double jeopardy claim." Petitioner primarily relies on *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), *amended*, 56 F.3d 41 (9th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996). In that case, the court held that a criminal prosecution following civil forfeiture proceedings pertaining to the same offense violates the Double Jeopardy Clause if (1) the civil forfeiture action and the criminal prosecution constitute separate proceedings and (2) the civil forfeiture action constitutes "punishment." *Id.* at 1216.

Subsequent to *$405,089.23*, the Ninth Circuit has made clear that "an owner who receives notice of the intended forfeiture and fails to claim an ownership interest in the property has effectively abandoned it." *United States v. Cretacci*, 62 F.3d 307, 310 (9th Cir.1995). The court concluded that the forfeiture of abandoned property does not constitute punishment and therefore "cannot be said to implicate the former owner's double jeopardy rights." *Id.* at 310–11; *see also United States v. Torres*, 28 F.3d 1463 (7th Cir.) ("[T]he $60,000 was forfeited without opposition, *and jeopardy did not attach.*"), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994); *United States v. Walsh*, 873 F.Supp. 334, 337 (D.Ariz.1994) (holding defendant "was not placed in jeopardy nor 'punished' in a constitutional sense" because defendant failed to make a timely claim to the forfeited property); *United States v. Kemmish*, 869 F.Supp. 803, 805 (S.D.Cal. 1994) (same) (Turrentine, J.), *aff'd*, 1995 WL

544681, 1995 U.S.App. LEXIS 27,294 (9th Cir. Sept. 12, 1995).

■ In the present case, Petitioner contends that he was criminally prosecuted after his car was seized and forfeited. However, this Court held in a prior order that "James never made a claim to his property and he does not dispute the adequacy of notice for the forfeiture proceedings." *United States v. James*, Cr. No. 90–1303–R (Oct. 30, 1995) ("Order Denying Motion For Return Of Property"). Since Petitioner now concedes that he did not contest the forfeiture proceedings, the result in this case is controlled by *Cretacci:*[9] forfeiture of Petitioner's abandoned property did not constitute punishment and therefore did not implicate Petitioner's double jeopardy rights. "[A]n accused must suffer jeopardy before he can suffer double jeopardy." *United States v. Wong*, 62 F.3d 1212, 1214 (9th Cir. 1995) (citing *Serfass v. United States*, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975)). Since Petitioner never suffered former jeopardy, he did not suffer double jeopardy.

## D.  No Evidentiary Hearing Is Required

A court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir.) *cert. denied*, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989). This Court finds that an evidentiary hearing is unnecessary in this matter since the records conclusively show that Petitioner is not entitled to relief.

## II.  Conclusion

Petitioner has failed to establish error in this Court's prior order. In addition, Peti-

---

**8.** This Court denies Petitioner's request "to order the Government pursuant to 28 U.S.C. § 2255 Rules to provide discovery of all cases of Vick's Inhaler abuse reported in the country." For the reasons stated above, this discovery would be futile to a successful claim of ineffective assistance of counsel.

**9.** Petitioner cites *United States v. Washington*, 69 F.3d 401, 404 (9th Cir.1995) for the proposition that *Cretacci* does not apply retroactively and

therefore does not apply to his case. Petitioner's reliance on *Washington* is misplaced. In *Washington* the court stated that *"Washington also argues* that *Cretacci* should not be applied retroactively to this case because it creates two new rules of criminal procedure." 69 F.3d at 404 (emphasis added). Contrary to Petitioner's assertion, the court did not decide whether *Cretacci* set forth a new rule, the court merely set forth what Washington argued. This Court finds that *Cretacci* does not set forth a new rule.

tioner's newly discovered information does not call for a different conclusion and his double jeopardy argument is without merit. For these reasons, Petitioner's motion for reconsideration is denied.

IT IS SO ORDERED.