WIENER, Circuit Judge:
Defendant-Appellant Crystal Denise Moore (“Moore”) appeals her sentence for a conspiracy that involved, inter alia, theft of United States Postal Service (“Postal Service”) mail from a “collection box.” She contends that the district court erred in calculating her offense level. Moore’s appeal presents an interpretation issue of first impression regarding Application Note 4(C)(ii)(I) to Guideline § 2B1.1 (“the Note” or “sub-sub-paragraph I”). We hold that the Note permits the district court to presume that there were at least 50 victims when calculating an offense level in a case that involves one or more Postal Service receptacles; absent probative evidence that the actual number of victims exceeded 50, however, the court may not presume more than 50, irrespective of the number of such receptacles that were involved. Accordingly, we vacate and remand for resentencing.
I. Facts & Proceedings
Moore pleaded guilty to one count for her role in a sophisticated conspiracy to steal mail, harvest identifying information, and cash forged paychecks. It is undisputed that Moore’s co-conspirators stole mail from six Postal Service “collection boxes.” Based on that number of collection boxes, and for reasons explained at greater length below, the probation office’s presentenee investigation report (“PSR”) presumed 50 victims per collection box— for a total of 300 victims — and recommended a 6-level enhancement to Moore’s offense level. Moore objected to the PSR, urging that the probation office misinterpreted the Note and that she should receive only a 4-level enhancement. The district court overruled Moore’s objection and sentenced her based on the PSR’s Guidelines range determined on the basis of the 6-level enhancement. Moore timely filed a notice of appeal.
II. Analysis
We review de novo the district court’s interpretation of the Sentencing Guidelines and Application Notes, applying ordinary rules of statutory construction.[1] “When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result.”[2] The Guidelines commentary “is authoritative unless it violates the *163 Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.”[3]
Moore’s offense level was calculated pursuant to § 2B1.1, which applies an enhancement based on the number of victims: 4 levels if the offense involved 50 or more victims but less than 250, and 6 levels if it involved 250 or more victims.[4] When mail is unlawfully taken, each intended recipient of that mail is deemed to be a victim.[5]
Application Note 4 to § 2B1.1 contains special rules for determining the number of victims based on the particular type of receptacle or receptacles from which the mail.is stolen:
(ii) Special Rule. — A case described in subdivision (C)(i) of this note that involved—
(I) a United States Postal Service relay box, collection box, delivery vehicle, satchel, or cart, shall be considered to have involved at least 50 victims.
(II) a housing unit cluster box or any similar receptacle that contains multiple mailboxes, whether such receptacle is owned by the United States Postal Service or otherwise owned, shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box or similar receptacle.[6]
Notably, sub-sub-paragraph I covers various types of receptacles owned exclusively by the Postal Service, so any mail stolen from such a receptacle was still in the Postal Service’s custody and control. Thus, none of that mail had been sorted by addressee, much less delivered to the addressee, before it was stolen. By contrast, sub-sub-paragraph II covers “cluster boxes” and other receptacles that comprise multiple individual mailboxes: Cluster boxes might belong to the Postal Service but might also (and most frequently do) belong to private parties or entities, such as office buildings or apartment complexes. Important to today’s issue, each separate mailbox within a cluster has already been assigned to an individual mail addressee: Once mail is placed in a mailbox within a cluster, that mail is no longer in the custody of the Postal Service; it has been sorted and delivered to the individual owner or assignee of that particular mailbox. This is why sub-sub-paragraph II need not presume an arbitrary number of victims (such as sub-sub-paragraph I does with 50), but proceeds directly (1) to determine the actual number of boxes in the cluster and then (2) to count each box’s assignee as one victim.
Moore’s appeal requires us to interpret the Note when, as here, mail is stolen from more than one of the Postal Service’s own collection boxes under the provisions in sub-sub-paragraph I — but not its or anyone else’s “cluster” boxes under II. The probation office simplistieally — and mistakenly-reasoned that, if taking mail from one collection box is presumed to produce at least 50 victims, then at least 300 victims are presumed to exist when mail is taken from six such boxes. Consequently, the PSR recommended the 6-level enhancement that results under *164 § 2Bl.l(b)(2)(C) when the offense involves 250 victims or more.
Moore countered that nothing in sub-sub-paragraph I authorizes presuming an additional 50 victims for each additional collection box. She reasons that, in the absence of any proof of the actual number of victims, only 50 victims could be presumed, ergo she should have received only the 4-level enhancement.
The parties could not find any case on point from any jurisdiction, and our own research confirms that vacuum. Given that lack of precedent, we understand the district court’s reliance on the probation office’s interpretation of the Note, which, at first glance, might seem plausible. Our de novo review nevertheless leads us to the conclusion that, under the plain language of the Note, the number of collection boxes in excess of one does not increase the presumed number of victims beyond 50. This plain reading is confirmed by a comparison to parallel provisions and does not produce an absurd result.
We begin, as we must, with the plain language of the special rule in sub-sub-paragraph I: “A case [in which undelivered mail was taken] that involved ... a United States Postal Service ... collection box ... shall be considered to have involved at least 50 victims.”[7] Parsing this language carefully, we first note that, if the case involved a collection box, it is the case itself, not the collection box or boxes, that is presumed to have involved at least 50 victims; the collection box itself does not have victims. And, whether the case involved a collection box is a straightforward, yes-or-no question: Either it involved such a box or it did not. Neither the question thus posed nor its answer changes if the case involved two boxes, or six boxes, or a box, a satchel, and a truck: The case itself still involved one of the rule’s named receptacles.
The probation office went astray by overlooking the introductory language in 4(C)(ii) and jumping straight to sub-sub-paragraph I. The probation office thus read only that a “collection box ... shall be considered to have involved at least 50 victims,” which narrow reading produced its flawed syllogism that, ergo, 50 more victims are presumed for each additional collection box. Although the Sentencing Commission certainly could have chosen to draft the Note that way, it did not.
We see no basis in the plain language of the Note for adding 50 presumed victims for each additional Postal Service receptacle. Accordingly, the presumption created by the Note is for at least 50 victims, but no more than 50, regardless of the number of such receptacles involved. Some credible proof is required to go beyond the presumption and find that there were in fact more than 50 victims.[8] Here, apart from the Note’s presumption, the record contains no independent evidence that 250 (or more) victims were actually involved. Therefore, only the 4-level § 2B1.1(b)(2)(B) enhancement was applicable.[9]
As noted above, this plain reading of sub-sub-paragraph I is confirmed by comparing it to the companion provision in *165 sub-sub-paragraph II, which governs “housing unit cluster” boxes: “A case ... that involved ... a housing unit cluster box ... shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box.”[10] Sub-sub-paragraphs I and II both begin with “[a] case ... that involved,” but that phrase is followed in each sub-sub-paragraph by its own list of expressly identified and distinctly different types of mail receptacles — and each provision directs the sentencing court to draw a different presumption regarding the number of victims. Based on these differences, if the case involved collection boxes, whether one or many, then under sub-sub-paragraph I the number of presumed victims is fixed at 50. Under sub-sub-paragraph II, by contrast, the total number of victims presumed corresponds precisely to the total number of receptacles in each of the “clusters” involved. A “collection box” is a single Postal Service receptacle; a “cluster box” is, by definition, a hive of multiple, separate receptacles, each of which is assigned to an individual mail addressee for the purpose of receiving mail delivered from the Postal Service to that addressee — each of whom is a separate, easily counted “victim.”
Sub-sub-paragraph II confirms that the Sentencing Commission knows precisely how to link the number of presumed victims in a case to the number of mail receptacles involved when it wants to by expressly counting “each ... box.” The Commission did just that in sub-sub-paragraph II for “cluster” boxes. But, in writing sub-sub-paragraph I, the Commission could not — and therefore did not — link the presumed number of victims to the number of collection boxes. When we apply the venerable interpretation canon of ex-pressio unius est exclusio alterius, we are further convinced that the Commission’s choice of language — and the distinction that it produces between the two provisions — was intentional.[11] The incongruity between the Commission’s treatment of collection boxes and its treatment of cluster boxes results from the Commission’s deliberate and logical choice.[12]
Contrary to the assertions of government and the dissent, this does not produce an absurd result. Rather, the special rule in the Note produces a reasonable solution to the enigmatic problem of fixing the number of victims when undelivered mail is taken from a given type of receptacle. For “collection boxes,” a one-size-fits-all presumption of 50 victims avoids the compounded uncertainty of “guesstimating” (1) the number of the pieces of mail (2) intended for an unknowable number of different addressees (3) that were taken from any of a number receptacles (4) which vary greatly in size and capacity. Indeed, we can only begin to imagine the troubling outcomes that might result if the government’s interpretation were credited and each receptacle added an additional 50 presumed victims. For example, a defendant who took mail from five shoulder satchels carried by postal workers would be presumed to have 250 victims and receive the 6-level enhancement, but another defendant who took every bit of mail from *166 one Postal Service truck would receive only the 4-level enhancement, despite the fact that a Postal Service truck would likely contain much more mail than the five satchels. That would truly be an absurd result.
Although the Commission’s arbitrary 50-victim presumption might either overstate or understate the actual number of victims in any given case, a single, across-the-board presumption reduces the burden on the probation office and results in consistent application of the 4-level enhancement for the number of victims under § 2Bl.l(b)(2)(B) in cases that involve theft of mail from the Postal Service’s delivery system. And, by setting a floor rather than a ceiling for the number of presumed victims, the Note still leaves the door open to proof of additional victims when and if such proof is available. This solution to an evidentiary problem strikes us as both logical and practical, and anything but productive of an absurd result.[13]
Finally, both parties cite the history of the special rules embodied in sub-sub-paragraphs I and II and the Sentencing Commission’s stated reasons for adopting them. As our analysis begins and ends with the unambiguous plain language of the Note, although, we need not, and therefore do not, consider those sources.[14] We nevertheless observe in passing that the Commission’s stated reasons satisfactorily explain the existence of different rules for different kinds of mail receptacles. When the Commission promulgated sub-sub-paragraph I, it explained that the special rule was necessary because of “the unique proof problems often attendant to such offenses.”[15] That problem is self-evident: When a collection box (or truck or satchel) is involved, no characteristic of the receptacle itself indicates the number of putative victims who were intended to receive the mail inside that receptacle. Presuming at least 50 victims is an arbitrary but reasonable way to cope with that inherent uncertainty.
Several years later, when it added sub-sub-paragraph II to address cluster boxes, the Commission was more specific in citing “unique proof problems in that once entry is gained to such a cluster box and mail is removed, it is difficult to determine the number of persons from whom mail was stolen.”[16] Cluster boxes differ from collection boxes; the number of individual boxes in a cluster assigned to different addressees allows a more case-specific determination of the number of victims, at a minimal burden on the probation office.
These somewhat different “proof problems” help to explain the Sentencing Commission’s creation of different rules in sub-sub-paragraphs I and II.[17] But, to reiter *167 ate, we base our holding on the unambiguous wording of the Note, not on what we speculate the Sentencing Commission might have been trying to achieve.
In sum, we conclude that the plain language of Application Note 4(C)(ii)(I) specifies a presumption of at least 50 victims in a case that involves any number — whether one or more — of the specific types of Postal Service receptacles listed in that note. Proof of more than 50 victims is permitted, but the Note does not authorize the presumption of more. The district court’s understandable error was in relying on the PSR’s erroneous multiplication of the number of victims by the number of collection boxes involved. On this record, Moore should have received only the 4-level § 2Bl.l(b)(2)(B) enhancement applicable to cases involving at least 50 victims but not 250 or more.
III. Conclusion
We VACATE Moore’s sentence and REMAND for resentencing consistent with this opinion.

. United States v. Serfass, 684 F.3d 548, 550-51 (5th Cir.2012).

. Id. at 551.

. United States v. Diaz-Corado, 648 F.3d 290, 292 (5th Cir.2011) (quoting Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)) (internal quotation marks omitted).

. U.S.S.G. § 2B 1.1 (b)(2)(B), (C).

. Id. at cmt. n.4(C)(i).

. Id. at cmt. n.4(C)(ii).

. Id., at cmt. n.4(C)(ii)(I).

. The dissent urges that the plain language of the Note "does not foreclose increasing the number of victims” if more than one receptacle is involved. Although the Note does not foreclose proof of additional victims, it does not allow the court to presume that additional victims exist.

.Because the Application Note is' unambiguous, we need not apply the rule of lenity in Moore's favor. See Seifass, 684 F.3d at 551.

. U.S.S.G. § 2B 1.1 at cmt. n.4(C)(ii)(II) (emphasis added).

. See, e.g., Serfass, 684 F.3d at 552.

. The dissent purports to see “symmetry” between sub-sub-paragraphs I and II that simply does not exist and that is not supported by the plain language of those provisions. As discussed below, “collection boxes” are physically and functionally different from "cluster boxes,” which difference is reflected in the distinctive structures of the different rules.

. Certainly, the Commission could have taken a different approach, but the mere existence of reasonable alternatives in no way requires us to conclude that the solution actually adopted is absurd. And there is nothing absurd about a rule that only partially relieves the government of its burden of proof at sentencing. See United States v. Teuschler, 689 F.3d 397, 399 (5th Cir.2012) ("The Government bears the burden of proving by a preponderance of the relevant and reliable evidence that the facts support a sentencing enhancement.”)

. Serfass, 684 F.3d at 551.

. II U.S. Sentencing Guidelines Manual app. C., at 173 (2003).

. Ill U.S. Sentencing Guidelines Manual app. C, at 133 (2011).

. Indeed, if the Commission — when drafting sub-sub-paragraph II years after it adopted sub-sub-paragraph I — had meant for the same presumption to apply to cluster boxes as the one applicable to collection boxes and the other types of receptacles listed in sub-sub-paragraph I, it could have (and presumably would have) simply amended sub-sub-paragraph I by adding "cluster boxes” to the list.