# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 22, 2015

Lyle W. Cayce
Clerk

No. 14-11276
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ANTONIO DE JESUS RAMIREZ-OLVERA,

Defendant-Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CR-133-1

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:[*]

Antonio De Jesus Ramirez-Olvera pled guilty to possessing with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The district court sentenced him to 240 months—ten years below the bottom of the applicable guidelines range. He now challenges that sentence, arguing that the district court erred by not distinguishing between

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

d-methamphetamine and l-methamphetamine when calculating the quantity of methamphetamine (actual) attributable to him. We affirm.

We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Moore*, 733 F.3d 161, 162 (5th Cir. 2013). "When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result." *Id.* at 162. Also, "[t]he Guidelines commentary is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 162-63 (citation and internal quotation marks omitted).

Ramirez-Olvera's presentence report, prepared by a probation officer, recommended that, for guideline computations, Ramirez-Olvera should be held responsible for 7.7 grams of methamphetamine (actual). To reach this figure, the probation officer relied on the results of DEA laboratory reports that analyzed the purity of three packages of methamphetamine seized from Ramirez-Olvera's house and cars. Ramirez-Olvera objected to the quantity recommendation on the ground that the laboratory reports did not distinguish between d-methamphetamine and l-methamphetamine. The district court overruled the objection.

Ramirez-Olvera argues that the district court needed to distinguish between d-methamphetamine and l-methamphetamine when determining the quantity of methamphetamine (actual) attributable to him. D-methamphetamine and l-methamphetamine are "stereoisomers of methamphetamine; they consist of identical molecules differently arranged." *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995). Unlike d-methamphetamine, l-methamphetamine "produces little or no physiological effect when ingested." *Id.* (citation and internal quotation marks omitted). The

sentencing guidelines provide a base offense level of 38 for an offense involving 4.5 kilograms or more of methamphetamine (actual); they do not explicitly distinguish between d- and l-methamphetamine. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (2014).

A 1995 amendment to § 2D1.1 indicates that courts need not distinguish between d-methamphetamine and l-methamphetamine when determining the quantity of methamphetamine (actual) attributable to a defendant. That amendment—Amendment 518—altered the drug equivalency table in § 2D1.1. Before the amendment, the table distinguished between methamphetamine, methamphetamine (actual), ice, and l-methamphetamine by assigning each substance a different marihuana-equivalent. *See* U.S. Sentencing Guidelines Manual, § 2D1.1, cmt. n.10 (Nov. 1995). Amendment 518 deleted the table's reference to l-methamphetamine. *See id.* app. C, vol. I, amend. 518 (Nov. 1995). The Sentencing Commission explained the amendment as follows:

> [T]his amendment deletes the distinction between d- and l-methamphetamine in the Drug Equivalency Tables in the Commentary to § 2D1.1. L-methamphetamine, which is a rather weak form of methamphetamine, is rarely seen and is not made intentionally, but rather results from a botched attempt to produce d-methamphetamine. Under this amendment, l-methamphetamine would be treated the same as d-methamphetamine (i.e., as if an attempt to manufacture or distribute d-methamphetamine). Currently, unless the methamphetamine is specifically tested to determine its form, litigation can result over whether the methamphetamine is l-methamphetamine or d-methamphetamine. . . . Under this amendment, all forms of methamphetamine are treated alike, thereby simplifying guideline application.

*Id.* In an unpublished opinion, we have relied on Amendment 518 to hold that "any distinction" between d-methamphetamine and l-methamphetamine is now "immaterial" when calculating drug quantity under the guidelines. *United States v. Beltran*, 91 F. App'x 349 (5th Cir. 2004). We conclude that, in light of

Amendment 518, the district court did not need to distinguish between d-methamphetamine and l-methamphetamine when calculating the quantity of methamphetamine (actual) attributable to Ramirez-Olvera.

The judgment of the district court is AFFIRMED.