**Opinion filed February 8, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00236-CR

_____

**JOE STARKS, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 23145-B**

## O P I N I O N

Appellant, Joe Starks, Jr., contests the sufficiency of the evidence supporting the trial court's guilty verdict—arguing that the approximately 5.2 grams of substance containing methamphetamine found in his possession, was not a *form* of methamphetamine that qualified as a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West Supp. 2023). After a bench trial, the trial court found Appellant guilty of the second-degree felony offense of possession of

methamphetamine and assessed his punishment at imprisonment for five years in the Institutional Division of the Texas Department of Criminal Justice. Following a careful review of the record, construing the relevant statute, and examining the evidence presented in the light most favorable to the verdict, we affirm.

*Factual and Procedural History*

When Esmerelda Brubaker left Abilene to attend a wedding, she allowed Appellant to stay at her home and watch her dogs. Upon her return, Brubaker and Appellant argued, after which, Appellant forced Brubaker out of her own home and locked the doors. Brubaker called the Abilene Police Department, and Officers Farley and Spurgin responded to the call. After having to forcibly extract Appellant from the home, Officer Farley searched Appellant. He found two plastic containers with clear plastic baggies inside and inside those baggies a "crystal-like substance", and a clear glass pipe that Officer Farley believed to be a "meth pipe," used for smoking methamphetamine. Officer Farley testified that Sergeant Harris performed a field test on the crystal-like substance, which tested positive for methamphetamine. The remainder of the substance was sent to a lab for testing. Christopher Cisneros, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, assigned to the case, testified at trial. Cisneros conducted preliminary lab testing that suggested the substance was methamphetamine, and he confirmed those preliminary test results with a gas chromatograph mass spectrometer test. Cisneros testified that the confirmed weight for the substances in the containers was 1.62 grams and 3.62 grams, for a total of 5.24 grams. Appellant's trial counsel asked Cisneros, "[t]here's no doubt in your mind that this was actually methamphetamine, a controlled substance?" Cisneros responded, "[n]o doubt in my mind."

In Appellant's sole issue, he contends that there is insufficient evidence to support the conclusion that he possessed a prohibited form of methamphetamine.

2

*See* HEALTH & SAFETY § 481.102(6).  On appeal, Appellant does not dispute that the evidence at trial established that the substance he possessed was methamphetamine. Instead, he argues that Section 481.102(6) is written and should be interpreted to include only its "salts, optical isomers, and salts of optical isomers," and that, under such an interpretation, the evidence is insufficient to support Appellant's conviction because it does not *exclude the possibility* that the substance possessed was a form of methamphetamine that is not prohibited by the Health and Safety Code.

*Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd).  Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  *Jackson,* 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Brooks*, 323 S.W.3d at 899; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  When the trial court makes fact findings, we determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports these fact findings.  *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022).  "We review legal conclusions, such as the construction of a statute, *de novo*."  *Id.*

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  As such, we defer to the

factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey,* 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.— Fort Worth 2008, no pet.). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Further, we treat direct and circumstantial evidence equally under this standard. *Isassi,* 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Each fact need not point

directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

When evidentiary sufficiency turns on the meaning of a statute, we must resort to statutory interpretation, which is a question of law that we review de novo. *Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020). "Statutory construction depends on the plain meaning of the statute's language unless it is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended." *Id.* To determine plain meaning, we read the statute in context and give effect to each word, phrase, clause, and sentence if reasonably possible, and we construe them "according to any applicable technical definitions and otherwise according to the rules of grammar and common usage." *Id.* If the plain meaning is not ambiguous and does not lead to absurd results, we do not consider extratextual factors. *Id.*

*Analysis*

A person commits the offense of possession of a controlled substance if he intentionally or knowingly possesses a controlled substance in the applicable penalty group without a valid prescription. *See* HEALTH & SAFETY § 481.115(a). Possession of a controlled substance in penalty group one is a second-degree felony if the aggregate weight of the substance is four grams or more but less than 200 grams. *Id.* § 481.115(d). One of the controlled substances in penalty group one is "[m]ethamphetamine, including its salts, optical isomers, and salts of optical isomers." *Id.* § 481.102(6).

Police found a white, crystal-like substance on Appellant after his arrest. Field testing determined that the substance contained methamphetamine. Further laboratory results confirmed this fact. The forensic scientist that ran the laboratory tests testified that there was "no doubt in [his] mind" that the substance was

methamphetamine, a controlled substance. While Appellant, on appeal,[1] concedes that the evidence at trial established that the substance he possessed was methamphetamine, he argues it might not have been a form of methamphetamine proscribed by Section 481.102(6). Appellant contends that because Section 481.102(6) specifically lists forms of methamphetamine, it must exclude other forms. *See Guinn v. State*, 696 S.W.2d 436, 438 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd) (explaining the statutory canon of construction *expressio unius est exclusio alterius*); *see also Ex parte Campbell*, 267 S.W.3d 916, 923 (Tex. Crim. App. 2008) (explaining that the maxim *expressio unius est exclusio alterius* means that expressing one thing implies the exclusion of what was not expressed). We disagree with Appellant's interpretation of the statute.

In statutory construction, our aim is to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Hardin*, 664 S.W.3d at 872 (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). Our focus is "on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment." *Id.* The text of the statute is the law and the only definitive evidence of what the legislators had in mind when the statute was enacted into law; constitutionally, the judiciary is bound to follow the specific text that was adopted. *Id.* We presume that every word, phrase, clause, and sentence has been used for a purpose and that each should be given effect if reasonably possible. *Id.* at 873. We read them in context and construe them according to rules of grammar. *Id.* Terms not legislatively defined but with an

---

[1]At trial, Appellant testified that he did not have any methamphetamine on him at the time of arrest. According to his testimony, the plastic capsules instead contained silver and gold metallic paper for model cars, one of Appellant's hobbies.

acquired technical meaning are construed in their technical sense. Otherwise, we construe terms according to common usage. *Id.*

Using these principles, we note that Section 481.102(6) does not textually exclude any form of methamphetamine from penalty group one. Instead, the statute reads: "Penalty Group 1 consists of: . . . (6) Methamphetamine, *including* its salts, optical isomers, and salts of optical isomers[.]" HEALTH & SAFETY § 481.102(6) (emphasis added). Here, it is the word "including" as used in the statute that is the focus of our statutory construction. A plain reading of the statute indicates that methamphetamine, in all forms, is a controlled substance. By using the term "including," the enumerated contents of methamphetamine that might be extracted to create other "bootlegged" substances do not limit the term methamphetamine; instead, the statute clarifies that methamphetamine, in the wide range of forms that it may be possessed, used, manufactured, or delivered, is an illegally controlled substance, and the statute prevents the exclusion of its salts, isomers, component parts, and other forms of methamphetamine as illegally controlled substances. *See* TEX. GOV'T CODE ANN. § 311.005(13) (West 2013) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."); *Clark v. State*, 704 S.W.2d 561, 565 (Tex. App.—Beaumont 1986, no pet.) (construing a previous version of Section 481.102(6), and stating, "Had the definition not contained the word 'including', but simply listed 'its salts, isomers and salts of isomers' then one might argue the legislature intended them to be considered separate items and the proof of one would not sustain a conviction for the other. This is not the case."); *See Maley v. 7111 Sw. Freeway, Inc.*, 843 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (In statute construction, "words such as 'including' or 'etc.' . . . open the door for us to expand

the list."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132–33 (2012) (The term "include" "introduces examples, not an exhaustive list.").

Appellant incorrectly argues the rule of *expressio unius est exclusio aterius* favors his interpretation of the statute. As noted in *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206–07 (5th Cir. 1996) "the rule of *expressio unius est exclusio aterius* [does not apply when] . . . the challenged list of provisions . . . is prefaced by the word 'including,' which is generally given an *expansive* reading, even without the additional if not redundant language of 'without limitation.'"

To support the argument that multiple forms of methamphetamine exist, Appellant cites to federal case law that interprets a prior version of a federal sentencing guideline that differentiated between certain forms of methamphetamine, for which the guidelines previously suggested a lesser sentence than other forms of methamphetamine or its isomers. *See, e.g.*, *U.S. v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995); *U.S. v. Bogusz*, 43 F.3d 82, 88 (3d Cir. 1994), *superseded by regulation as recognized in U.S. v. DeJulius*, 121 F.3d 891, 894–95 (3rd Cir. 1997). Even if these cases were relevant to interpreting Texas' Health and Safety Code, they do not address sufficiency of the evidence to support a conviction. For the purposes of conviction, Federal law does not differentiate between forms of methamphetamine. *Acklen*, 47 F.3d at 742 ("For purposes of conviction, the difference between the isomers is irrelevant; section 841 does not distinguish among types of methamphetamine.").

Section 481.102(6) unambiguously lists all forms of methamphetamine as a controlled substance, and there is undisputed evidence that Appellant possessed methamphetamine at the time of his arrest. Even if we were to interpret the statute as Appellant advocates, which we do not, there is testimony in the record from which

the trial court could have concluded that the *form* of methamphetamine possessed by Appellant was that of a controlled substance as described in penalty group one. Expert testimony confirmed, and there was no scientific evidence to the contrary, that the substance possessed by Appellant and lab tested "was actually methamphetamine, *a controlled substance*." The evidence, viewed in a light most favorable to the verdict, is sufficient to support the trial court's conclusion, as the trier of fact, that Appellant possessed methamphetamine, a controlled substance in penalty group one, without a valid prescription. *See* HEALTH & SAFETY § 481.115(a).

Accordingly, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

February 8, 2024

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.